Long v. Boone County.

---

## LONG v. BOONE COUNTY.

1. **County:** CONSTRUCTION OF BRIDGES. Under the provisions of the statute, to the effect that " the county judge may cause the erection of a bridge ovey any stream in the county when such stream is not navigable, provided the expense thereof does not exceed over $500," without submitting a proposition therefor to a vote of the people, he may properly contract for the construction of a bridge ( not exceeding the limit mentioned as to amount ), over a ravine on a public road, though no constant stream of water passes through the same.

2. —— If water exists with sufficient frequency to render a bridge essential to its safe and convenient passage, it is sufficient to authorize such action without submitting the same to a vote.

3. —— Nor is such power dependent on the raising of a special tax to meet the expense. If no special tax be raised the expense must be paid from the ordinary county revenue.

4. —— But as to the digging of drains in the grading and improvement of a street, the county judge had no such power.

5. —— VALIDITY OF WARRANT. If a vote of the board of supervisors authorizing the issue of a warrant is taken, its validity cannot be affected by a failure on the part of the clerk to record the same.

6. —— RECOVERY OF AMOUNT PAID THEREON. When the legally constituted agent of the county contracts for work in respect to which he has no power unless authorized by a special vote of the people, and executes a warrant for the amount thereof on the treasurer of the county, which is voluntarily paid by the latter officer, the county cannot recover back the amount so voluntarily paid.

*Appeal from Boone Circuit Court.*

THURSDAY, JANUARY 24.

THIS cause was before the court at a prior term upon the plaintiff's appeal from the overruling of his demurrer to the answer, and was reversed and remanded. See 32 Iowa, page 181. The cause again coming before the court for hearing, the defendant filed an amended answer, the fourth count of which alleges, that October 22d, 1859, plaintiff and the county judge agreed in writing that plaintiff should construct a bridge over a ravine on a certain public road in said county, for the consideration of $300, to be paid by said county; that plaintiff constructed said bridge, and on the 2d day of December, 1859, said judge issued him three county warrants in the sum of $100, payable out of any funds in the county treasury not otherwise appropriated; that the ravine crossed by said bridge is not, and never has been, a stream where there has been running water; that said ravine was about ten feet deep and thirty feet across, and the bridge was built about one hundred yards from its head; that no special tax was levied in said county for the constructing or aiding to construct any road or bridge therein; that no proposition has ever been submitted to the voters of said county for said purpose, nor has there ever been a tax voted in any manner, as provided by chap. 152, Laws of 1858, or in any other manner; that the indebtedness of said county at the time of the construction of said bridge was about $9,000, then due; that during said year said judge entered into contracts with different persons for the construction of bridges in said county to be completed and paid for in said year, 1859, amounting to about $6,000; that there were no other funds belonging to said county to pay said indebtedness except the ordinary county revenue; that the tax for ordinary county revenue levied for the year 1859 was five mills on the dollar on $1,801,752, being the total valuation of the property in the county for said year; that there did not exceed the sum

of $2,000 money belonging to the ordinary county revenue in the treasury of said county at the date of making the contract for the building of said bridge; that there was no bridge or road fund in said county treasury at said time; that no fund or money had ever been appropriated for the payment of said bridge contract otherwise than as aforesaid.

The fifth count alleges an agreement of the county judge with plaintiff for the improvement of a portion of road in the county and the construction of a number of small culverts for the consideration of $500, entered into under the same circumstances as set forth in the fourth count.

The sixth count alleges that plaintiff presented to the county treasurer a number of the county warrants issued under the contracts above set forth, and that the treasurer in ignorance of the manner and for what purpose they were issued paid thereon the sum of $803.59. Defendant asks judgment for this sum with interest.

The second count alleges that one of the warrants sued on was issued by the clerk of the board of supervisors, without a recorded vote or resolution of said board, and was not issued for jury or witness fees.

The plaintiff's demurrer to all the counts of the answer except the third, was overruled as to the second count, and sustained as to the others. Both parties appeal.

The further necessary facts are stated in the opinion.

*I. J. Mitchell* and *W. B. Means* for the plaintiff.

*W. R. Lawrence* for the defendant.

DAY, J. — The former appeal presented the single question as to the validity of warrants issued by the county for the construction of roads and bridges. It was held that such warrants were not necessarily void, and that an answer alleging that they were issued pursuant to a contract with the county judge, for grading and improving a road and building bridges, constituted no

1. COUNTY: construction of bridges.

defense. The case now presents the question, not determined and not involved before, as to what precedent steps are necessary to the validity of such contract. Section 114 of the Code of 1851 (§ 250 of the Revision of 1860) provides that the county judge may submit to the people of his county at any regular election, or at a special one called for that purpose, the question * * * whether the county will construct or aid to construct any road or bridge which may call for an extraordinary expenditure. Section 10, chap. 93, Laws Seventh General Assembly, is as follows: " The county judge may cause the erection of a bridge over any stream in the county of which he is judge, when said stream is not navigable, provided the expense does not exceed $500, and for that purpose he may enter into contract with one or more persons, which shall be binding on the county." The next section provides that the county judge may enter into a contract for the erection of a bridge costing more than $500, if one hundred of the qualified voters of the county petition him for that purpose. Chapter 154, Laws of Seventh General Assembly, prescribes the general plan for making and repairing highways, placing them under the care of road supervisors, and providing for the levy of a tax therefor by the township trustees upon the respective road districts.

Chapter 152 of the same statute provides for the levy by the board of equalization of a tax of not more than one mill on the dollar for the making and repairing of bridges, whenever such tax is authorized by a vote of the people of the county, upon the question being submitted to them according to law. From these provisions it appears that no general authority was conferred upon the county judge to bind the county by contract for the construction of highways. He had authority to submit to the voters of the county the question of constructing or aiding to construct any road or bridge calling for an extraordinary expenditure. If they should sanction such a procedure by their votes, then as the financial agent of the county he would be authorized to enter into the contracts necessary to give effect to the will of the people thus expressed.

The fourth count alleges a contract made in October, 1859, for the building of a bridge over a ravine in said county, in which there is not, and never has been, a stream of running water, and that it also was made without submitting the question of aiding in the construction of roads and bridges to the voters of the county. Hence this contract was improperly made, and the warrants in discharge of it were improperly issued, unless it falls under the provisions of section 10, chapter 93, Laws 1858. This section authorizes a county judge to build a bridge over any stream in the county of which he is judge.

This statute should receive a liberal construction so as to effectuate its purpose. It is certainly not necessary that a stream should have a constant, continuous flow, in order to authorize the county to construct a bridge across it. Many streams in the State are entirely dry during months in the year, and yet are subject to such rapid and extensive rises at other seasons as to render the bridging of them just as essential and as expensive as though the current were constant. Nor is it necessary, it seems to us, that there should be an actual current in order to justify this action upon the part of the county. It is well known that there are in some portions of this State what are termed "sloughs," of great width and depth, filled during the greater portion of the year with surface water and back water from rivers, and at all times of the year impassable unless bridged. The cost of bridging these is often much greater than that of bridging running streams.

A construction should not be placed upon this statute which would deprive a county of the power of bridging such "sloughs" if it is reasonably susceptible of a different construction. One of the definitions of a stream is simply "water." See Webster's Dictionary, verbum stream. Taken in this acceptation the statute authorizes the county judge to build a bridge over "water" in his county. This we believe to be its reasonable and proper construction.

The count under consideration alleges that the ravine is not and never has been a stream of *running water*. This may be

true, and yet the necessity for bridging it be just as great as though it were such stream.

A ravine is defined to be a long, deep and narrow hollow, worn by a stream or torrent of water; a long, deep and narrow hollow or pass through mountains. Hence the presence of water, at least occasionally, is almost inseparable from the idea of a ravine.

And if water exists in sufficient abundance and with sufficient frequency to render a bridge essential to its safe and convenient passage, we are of opinion that the county judge had authority, under the section above quoted, to construct such bridge. And this authority, we think, he possessed in the absence of any special tax for that purpose. The section confers upon him a general power to contract for the erection of bridges, and does not make it dependent upon the raising of a special tax therefor. If no such special tax should be provided, the expense must, necessarily, be borne by the ordinary county revenue.

It follows from these views that, in our opinion, the demurrer to the fourth count was properly sustained.

II. The fifth count of the answer alleges that the county judge entered into a contract with plaintiff in December, 1859, for grading and improving a portion of the public road in said county and for constructing a number of small culverts thereon, and that certain of the warrants to the amount of $500 were issued in pursuance of said agreement. The contract set out as an exhibit to this count of the answer provides for the building of a series of small bridges over sloughs in a lane, the making of drains along and of cuts across the lane so as to make it passable at all seasons of the year. The contract for this work was entered into, as alleged in this count of the answer, without any proposition to aid in the construction of roads having been submitted to the voters of the county. So far as it applied to the building of bridges, it was authorized by section 10, chapter 93, Laws of 1858, as we have before seen. But so far as it referred to the digging of drains and cuts, it was entered into without authority and the warrants

made in payment of this work, were improperly issued. This count sets up, therefore, at least a partial defense, and the demurrer to it should have been overruled.

III. The second count alleges that a certain one of the warrants was issued by the clerk of the board of supervisors

5. —— validity of without a recorded vote or resolution of the
warrant.             board. It is not averred that no vote of the board was in fact taken, but that none was recorded. In *Clark* v. *Polk County*, 19 Iowa, 248, it is said: "If the vote had actually passed, and the failure to record it was a *mere clerical omission*, we are clear that such omission could not invalidate an order otherwise legally and properly issued." The demurrer to this count should have been sustained.

IV. The sixth count alleges that plaintiff presented for payment to the county treasurer, about the 4th of February, 1867,

6. —— recovery   and at divers times thereafter, eleven of the
of amount paid    warrants issued for the construction of said
thereon.          bridges and the making of said road, and that the treasurer paid the same, wholly ignorant of their character and of the manner in which they had been issued. Three of these warrants were issued for the building of the bridge referred to in the fourth count of the answer, and hence were, for aught that appears, properly issued. Six of them were issued for the constructing of culverts and improving a public road, under the contract referred to in the fifth count of the answer, and hence some of them may have been issued improperly. The character of the remaining two does not appear. Defendant asks judgment for the amount paid on these warrants. The plaintiff's demurrer to this count was sustained, and, as we think, properly. There is no question as to the principle that money paid in mistake of a material fact may be recovered. But this case does not fall under that principle.

The county judge, as the financial agent of the county, entered into a contract which, under the circumstances, he had not authority to make. But he had full knowledge of all the facts connected with the agreement at the time he executed it.

His mistake was not as to any fact, but as to the law applicable to the case.

The county judge, the business agent of the county, knew all about the facts under which the. warrants were executed. The warrants were a general order upon the treasurer to pay the amounts therein designated. The duties of the treasurer were purely ministerial. It was not his duty to know nor his business to inquire upon what consideration the warrants were executed. If the county judge had united in his person the functions of treasurer, in connection with his other duties, and as such had paid the warrant, it probably would not be claimed that the amount so paid could be recovered. In what different position does the county now stand, the county judge having ordered a ministerial officer of the county to make the payment, whose duty it is to obey the direction given without inquiry? Can the county claim relief because of an officer's want of knowledge respecting facts of which the law does not require the officer to know any thing? This cannot, it seems to us, be so. The treasurer was only the instrument through which the county made payment. The county, through its representative and agent, the county judge, knew upon what account the payment was made, and cannot recover the amount so voluntarily paid. *Supervisors of Onondaga Co.* v. *Briggs*, 2 Denio, 26 ; *Snelson* v. *The State*, 16 Ind. 29, and cases cited ; *Clarke* v. *Dutcher*, 9 Cow. 673.

V. Upon the trial the defendant introduced the record book of the county judge of Boone county, containing the following entry : "Ordered, that John Long receive warrants on the county treasurer for the sum of eight hundred and fifty dollars, in full, on his bridge contracts in Douglass township."

Following this is a specification of eight warrants for $100 each, and one for $50. The plaintiff thereupon testified that the fifty dollar warrant was for right of way which he had to purchase for the bridge.

Defendant objected to this testimony as tending to contradict the record. The testimony is not vulnerable to that objection. The order is for full payment upon the bridge contracts.

It does not contradict the record, to show upon what particular consideration the fifty dollar warrant was drawn, if that consideration is connected with the building of the bridge.

Because of the sustaining of the demurrer to the fifth count of the answer, the cause is reversed upon the defendant's appeal; and because of the overruling of the demurrer to the second count of the answer, the case is reversed upon the plaintiff's appeal.

Reversed.