## J. H. SPARKS v. JASPER COUNTY, Appellant; and J. H. SPARKS, Appellant, v. JASPER COUNTY.

### In Banc, June 26, 1908.

1. **BRIDGE: Contract: Recovery.** If the contract for the building of a county bridge was not properly let, the contractor cannot recover thereon.

2. ————: ————: **Letting at Another Place.** The letting of a contract to build a bridge to the highest bidder at a place a half mile from the bridge, the advertised place, and at a place where it could not be determined whether or not other bidders were at the bridge site, is not a valid letting, and a contract made in pursuance thereto is not a valid contract. And hence when the contractor sues on the contract for the balance of the money he was to receive for constructing the bridge, he cannot recover, although the bridge has been built and accepted, and the county court has in part paid him for the work.

3. **PAYMENT: Wrongful Application.** Where the county court appropriates money for the payment of a specific valid indebtedness, the payee has no right to apply it as a payment on another valid indebtedness. So that where the county court issued a warrant for $1,100 for the "Tuckahoe bridge," the contractor had no right to apply $65 of the sum to the payment for concrete pillars on the "Jones Creek bridge" and only the balance on the Tuckahoe bridge, but the entire $1,100 is to be considered as a payment on the cost of the Tuckahoe bridge.

4. ————: **Order to Subcontractor: Assignment Before Due.** The contractor for bridges issued a written order to the county court to pay his subcontractor $3,500 for building the bridges "payable when work is completed and accepted by the county surveyor." The subcontractor assigned the order to a bank, which gave him credit for the entire amount. Thereafter the subcontractor abandoned his contract, and did not finish the bridges, but before the order was countermanded the county paid the bank $600, and thereafter, over. the contractor's protest, paid the bank the balance. The contractor finished the bridges, and sues the county for said balance. *Held,* That no agreement between the bank and the subcontractor by which it was to furnish him money to buy material and employ laborers to carry on the work and be paid by an assignment to it of the contractor's orders on the court to the subcontractor, was binding on the contractor, even though he knew of the

agreement, in the absence of any agreement on his part to reimburse the bank or any direction on his part to the bank to furnish the subcontractor money on account of said orders; and the contractor is entitled to recover from the county the said balance by it paid to the bank.

5. **ILLEGAL CONTRACT: Performed: Recovery of Money Paid.** Where there has been a complete performance of the bridge contract on both sides and it was fair and reasonable in fact, the county cannot recover from the bridge contractor the money paid him for building the bridge under the illegal contract, so long as it retains and enjoys the use of the bridge and will not or cannot restore the bridge to the contractor.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

REVERSED AND REMANDED (*with directions*).

*Thomas & Hackney* for Sparks, appellant and respondent.

(1) Plaintiff was entitled to the $65 for concrete pillars put in the Jones Creek bridge in order that the bridge might be set out of and above the water. It was shown by the evidence that at the time of making the contract for the removal of the bridge to Jones Creek, it was thought that the legs of the bridge were sufficiently long to put it above the water, but on getting the bridge to Jones Creek it was found that to rebuild the bridge as contemplated would set it under water. Hence, the bridge commissioner under the direction of the county court ordered the construction of concrete pillars, which were shown to be of the reasonable value of $65, and the plaintiff was entitled to this sum, and having received it and given credit on this account out of the $1,100, is entitled to recover the balance due on the bridge contract. Bryson v. Johnson County, 100 Mo. 76; Beach on Corporations, sec. 1079. The building of these concrete pillars became necessary to meet an unforeseen exigency, the same as in Bryson v. John-

son County, supra. (2) The payment by the county court of the $2,900 to the Central National Bank as assignee of the Miller order was without authority of law. It was admitted that Miller never built the bridges but abandoned the work as soon as the order was obtained. Sparks was compelled by the county court to complete the work, which he did at an expense of $4,100; whereas, Miller should have done this work for $3,500 under his contract with Sparks. The county court had no power to accept this order and there was no acceptance. But even had it had the power to accept and even had the order been accepted in fact, yet the failure of Miller to perform the contract prevented the county court from paying the order. Crowell v. Plant, 53 Mo. 145. Sparks had the right to revoke the order at any time before Miller should complete the bridges and the order should be paid in full by the county court; and the written and oral notice served by Sparks on the county court notifying them not to pay this order effectually nullified the order. Dickson v. Coates, 79 Mo. 250; Albers v. Bank, 85 Mo. 173; 1 Morse on Banking (3 Ed.), sec. 398; Banschaack on Bank Checks, p. 83; Boon on Banking, 198; Bank v. Millard, 10 Wall. 152. (3) Defendant was not entitled to recover back from the plaintiff any moneys theretofore paid him on any bridges built. The contracts for the building of these bridges had been fully performed on both sides long prior to the institution of this suit. These contracts were shown to be fair, the bridges substantially built and well worth the money, and kept and used by the county and the public. There was no tender of the bridges to the plaintiff nor offer to restore them to him; and the amended answer did not plead any offer to restore or return the bridges. In such a case, regardless of the question of irregularity of the contract, there can be no recovery by the county of the money thus paid for the bridges. Frick

v. Town of Brinkley, 61 Ark. 397; 20 Am. and Eng.
Ency. Law ( 2 Ed.), 1180; Riverside County v. Yaw-
man & Erbe Mfg. Co., 86 Pac. 900; Long v. Boone
County, 36 Iowa 60; Inhabitants of Schell City v. Rum-
sey Mfg. Co., 39 Mo. App. 364. The obligation to do
justice rests upon all persons, natural and artificial,
and if the county obtains money or property of others
without authority, the law, independent of any statute,
will compel restitution or compensation. Chapman v.
County of Douglas, 107 U. S. 355; Marsh v. Fulton Co.,
10 Wall. 684; Louisiana v. Wood, 102 U. S. 294; Hitch-
cock v. Galveston, 96 U. S. 350. (4) The judgment
rendered in the Bradley case was without effect on the
rights of plaintiff. The action was not instituted by
Bradley and the other citizens until two of the bridges
were practically completed and the other two were in
process of construction. No injunction was asked or
obtained suspending operations under the contracts.
The defendants entered their appearance without ser-
vice or process and urged a speedy trial of the case, but
the plaintiffs delayed the trial almost a year after the
institution of the suit. In the meantime the county
court required the contractor, Sparks, to go ahead with
the construction of the bridges. This he did and the
bridges were completed and paid for long before the
trial of the case. The mere institution of this suit
would have been no justification to Sparks for delay in
the performance of his contracts. The citizens had
ample opportunity to suspend the work by suing out
an injunction but they saw fit not to sue out this in-
junction and with the knowledge that the bridges were
being constructed, allowed the work to go on to com-
pletion. They, as well as other tax-payers, and the
county itself, thus waived their right to question these
contracts; and the decree of the trial court, which
showed that the contracts had been performed prior to
its rendition, was evidence of its own inability to affect

the contracts. (5) The only object of the advertise-
ment of the commissioner for bids was to notify pros-
pective bidders of the proposed letting and of the time
and place thereof so that competition might be had.
When the commissioner and all the prospective bid-
ders assembled at a point within half a mile of the site
of the bridge and in plain view thereof, and saw that
there were no other persons at the site of the bridge,
and that there would be no other bidders in attendance
at the letting, and the contract was then let in good
faith by public outcry, this was a substantial com-
pliance with the notice. Under these circumstances
the parties were "at the site" of the proposed bridge.
The words "at the site" contained in the notice should
be construed to mean "near the site" and should not
be construed to mean "in" or "on" the site. Century
Dictionary, "At;" Webster's Dictionary, "At;"
Standard Dictionary, "At;" Purifoy v. Railroad, 108
N. C. 100; Minter v. State, 104 Ga. 753; O'Conner v.
Nodel, 117 Ala. 595; Parke's Appeal, 64 Pa. St. 137;
Williams v. Railroad, 82 Tex. 559; Howard v. Fulton,
79 Tex. 236; Railroad v. Manning, 70 Ill. App. 242;
Railroad v. Railroad, 31 N. J. Eq. 486; State v. Cam-
den, 38 N. J. L. 299; Railroad v. Beeler, 90 Tenn.
548.

*McReynolds & Halliburton* for Jasper county, ap-
pellant and respondent.

(1) Plaintiff is not entitled to recover $65 for the
concrete pillars on Jones Creek bridge. This has not
been paid. The record shows the $1,100 was paid on
contract and the suit is on the contract. There was no
contract for the concrete pillars. It is a well-settled
rule that in a suit on contract plaintiff cannot recover
on *quantum meruit.* Heidelberg v. St. Francois Co.,
100 Mo. 69; Anderson v. Ripley County, 181 Mo. 46;
Reed v. Mexico, 101 Mo. App. 161; King v. Ins. Co.,

101 Mo. App. 171; City of Unionville v. Martin, 95 Mo. App. 38; Miller v. Douglas, 102 S. W. 996. (2) Plaintiff is not entitled to recover the $1,495 on Blackberry bridge, for the reason that the contract was fraudulent, in that it was not let as advertised and as required by law, and this with the active participation of plaintiff. (a) On the question of sale under a deed of trust it is held that to pass a perfect title, the sale must be at the place required by the deed of trust. Stewart v. Brown, 112 Mo. 171; Schanewerk v. Hoberecht, 117 Mo. 22. (b) It is held that a sale under execution must be made at the time and place advertised or it is void. Bank v. Evans, 51 Mo. 35; Ladd v. Shippie, 57 Mo. 523. (c) A sale made at sitting of county court instead of circuit court is void. Roberts v. Nelson, 86 Mo. 21. (d) This contract for construction of Blackberry bridge was illegal and void, being made in violation of the statute. And the courts will not aid plaintiff to enforce it. Conner v. Black, 119 Mo. 126. (e) And it is immaterial whether the illegality is shown by the contract or established by evidence *aliunde*. Sumner v. Summers, 54 Mo. 340; Bick v. Seal, 45 Mo. App. 475. (f) A conveyance (same rule will apply to contract), to be fraudulent, need not originate in a premeditated design to commit a positive fraud or to injure others. Many acts, from their tendency to deceive others or from their injurious consequences to the public, are prohibited by the law as being within the same reason as actual fraud. Reed v. Pelleiter, 28 Mo. 175; Wait on Fraudulent Conveyances, sec. 9, note 2; Bank v. Harrison, 57 Mo. 508; Bishop on Contracts, 456-7-8; Karnes v. Ins. Co., 144 Mo. 413. (3) Plaintiff is not entitled to recover the $2,900 paid the Central National Bank on order to Miller. A proper construction of that order does not require that Miller should build all the bridges. This order was for value assigned to the bank, filed with county court, $600 paid thereon by

defendant, and such payment approved by Sparks. The order, if it will bear two constructions, defendant having acted thereon, the construction most favorable to defendant and should be given it. Nordyke & Norman Co. v. Kehlor, 155 Mo. 643; Clo. Co. v. Sharpe, 83 Mo. App. 385. This order can be held valid and binding on Sparks without doing violence to its terms or to any settled principle of law. Glass Co. v. O'Malley, 67 Mo. App. 639; Rdijeceit v. Andrews, 63 Central Law Journal 285. (4) Defendant's claim to recover $1,400 paid on the Blackberry bridge is based on the same proposition that prevents plaintiff's recovering the balance of $1,495 on that contract, to-wit: The contract was obtained by the commission of a fraud on the county court and the county by the plaintiff and the bridge commissioner. While it is a settled rule of law applicable to individuals, and by some courts applied to cities and counties, that where money is voluntarily paid on a void contract or without contract with a full knowledge of the facts, it can not be recovered back, even though paid under a mistake of law (though some courts hold that money paid by officers of counties or cities on illegal contracts can be recovered), but all of them hold that if paid in fraud it can be recovered. Parks v. Tolman, 113 Mo. App. 19; 2 Kent's Com., 482. This is especially applicable to contracts on Blackberry bridge, for we must believe the county would not have made this contract if it had known the letting was not at the place advertised. Tandy v. Live Stock Com. Co., 113 Mo. App. 409; Knox Co. v. Hunolt, 110 Mo. 67; Morrow v. Thurber, 97 Mo. 155. The only case we find in this State of a city or county trying to recover money paid on a void contract, where there was no question of trust fund or fraud, is Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264, and in that case the law is stated that to prevent recovery the money must be paid with full knowledge of facts, and without fraud.

The fraud in the Blackberry bridge letting, the fraud in the Terry's Ford, etc., bridges takes the action to recover the money paid on them out of the rule in regard to voluntary payments. In fact, in the Terry's Ford bridges, $6,578 was paid by a fraudulent action of the then judges and the plaintiff to defeat the suit in the circuit court, which fraudulent action should not be tolerated by this court, and no ear should be lent to plaintiff's plea of hardship in having to return this money as he voluntarily entered into a fraudulent action with the then judges to defraud the county out of any benefit from the suit of the taxpayers. And so the payments are not voluntary on the part of the county. (5) As to recovering money wrongfully paid plaintiff by county court: Ada Co. v. Gess, 43 Pac. 71; 39 Cyc. 422 D; Inhabitants v. Van Bussum, 7 N. J. L. 42; King v. Mahaska county, 75 Iowa 329. Money paid under a contract declared by a statute to be void, being paid as if paid under no contract, and without consideration, may be recovered back. Gist v. Smith, 78 Ky. 367; Ripley v. Case (Mich.), 18 Am. St. 428; Donohue v. New York, 10 Hun 37; Holms v. Johnson, 59 Tenn. 155; Eslin v. Dist. of Columbia, 29 Ct. Claims 370.

PER CURIAM.—The foregoing causes having been reconsidered and argued in the Court in Banc, the opinion of WOODSON, J., in Division No. One, reversing the judgment and remanding the cause, is adopted as opinion of the Court in Banc. *Gantt, C. J.,* and *Burgess* and *Valliant, JJ.,* concur; *Fox, J.,* expresses no opinion; *Lamm* and *Graves, JJ.,* dissent.

WOODSON, J.—These appeals result from an action brought by J. H. Sparks against Jasper county to recover judgment for balances claimed to be due on three separate contracts for the construction of

bridges in said county, and the finding and judgment of the court on the pleadings and evidence. Appeals were taken by both plaintiff and defendant, and should have been brought to this court on one bill of exceptions and as one case, but were brought up on separate bills of exceptions and as separate cases; they should be heard together.

The lower court found against plaintiff on the first count of his petition and for him on the second ·and third counts of his petition; found against defendant as to its various defenses, except on the first count of the petition; found against defendant on all its counterclaims except twenty-two dollars over-payment, and rendered a judgment in favor of plaintiff for the balance of —— dollars.

A concise showing of the issues made by the pleadings is as follows:

*The amended petition is in three counts:*

| | | |
|---|---|---|
| 1st | Count on contract for Blackberry Bridge ...... ........... ............$2,895.00 | |
| | With credit for $1,400.00; balance claimed ......... .......... ........ | 1,495.00 |
| 2nd. | Count on contract for Tuckahoe or Turkey Creek Bridge and moving and rebuilding bridge on Jones Creek........ | 2,990.00 |
| | For extra concrete pillars at Jones Creek ......... .......... ......... | 65.00 |
| | Credits $1,100 paid, and claims balance of ........... .................... | 1,955.00 |
| 3rd. | Count on contract for three steel bridges, 1 Turkey Creek range line bridge, secs. 32 and 33; span south end of Terry's Ford bridge; 1 bridge across Center Creek at Reeds Station........ | 9,650.00 |
| | Credits $5,400, and claims balance of.. | 4,250.00 |

#### AMENDED ANSWER.

1st. Denies right to recover $1,495 on Blackberry bridge or part for reason contract was not let as provided by law. Advertised to be let at bridge site and if let at all was let one-half mile or more from site, and contract sued on was obtained by fraud committed by plaintiff and Grieb, Bridge Commissioner, on county and county court.

2nd. Denies right to recover $65 for concrete pillars at Jones Creek bridge. No contract for same and no order of county court for same. The payment of $1,100 by county court was on contract for Tuckahoe and Jones Creek bridge and not on extra. Plaintiff has no right to apply any part on this extra concrete pillar work.

3rd. Defense as to $2,900 by virtue of order of Sparks to David Miller for $3,500 upon which county has paid $600 to Central National Bank, assignee of order with plaintiff's approval, and after completion of bridge contracts paid said bank $2,600, for which defendant is entitled to credit.

#### COUNTERCLAIMS AND OFFSETS BY DEFENDANT.

1st. Claim for $1,400 paid on Blackberry Bridge for the same reasons for defending against first count for balance claimed on said bridge.

2nd. Claim for $2,471—$22 being amount overpaid as shown by contracts and payments on Carl Junction, Belleville and Rucker's Ford bridges. The contract being $13,678, and the payment being $13,700. $2,449 of claim being for amount paid for extra span on Carl Junction bridge. Said span being built without any contract upon an order of the county court without any compensation being fixed.

3rd. Claim for $15,935—$4,850 for Terry's Ford bridge; $2,645 for Duenweg bridge; $4,745 for Hille's

Ford bridge; $2,545 for Center Creek Bridge; $1,250 additional fifty feet on Terry's Ford bridge.

There is little or no dispute about the facts when you get into the evidence. So the questions before the court are mainly questions of law.

## OPINION.

I.   The plaintiff insists that the finding of the court against him on the first count of the petition was error, and that the judgment rendered thereon should be reversed.

The plaintiff's evidence upon this count of the petition tended to prove that the contract for building the bridge was advertised to be let by public outcry at the site of the proposed bridge, and that on the day designated for letting the contract, the road and bridge commissioner of the county, accompanied by plaintiff and three other prospective bidders for said bridge, went by rail to Carl Junction, and from there drove in a hack to a point about one-half mile from the site of said proposed bridge, and in plain view thereof; that they looked at the site from that distance, but saw no one there; that said bridge commissioner announced then that he would then and there let the bridge contract by public outcry to the lowest bidder; that in good faith he proceeded to let the contract by outcry, and received several bids from the various parties who accompanied him, among whom was the plaintiff, who bid $2,895, which was the lowest bid made; and that the contract was then and there awarded to the plaintiff for said sum, which was afterwards approved by the county court, and, in pursuance thereof, the contract sued on was executed.

The defendant's evidence tended to prove that when the parties got to within about one-half mile of the site of the proposed bridge, they realized that they could not drive on to the site and return in time to

catch their train, home-bound, at Carl Junction; that they turned round and drove back to the Junction without letting the contract or attempting to so do.

The court gave an instruction for the plaintiff and defendant, presenting their respective theories of the case. Under the evidence and the instructions the court found the facts for the defendant and rendered judgment accordingly. This action of the court is assigned as error.

The law requires public notice to be given of the proposed letting of contracts for building bridges, stating the time and place the contract will be let. The object of the notice is to inform prospective bidders of the proposed letting so that they may meet there and make competitive bids for their construction.

The court found, and justly so, we believe, that the bridge commissioner and the bidders who accompanied him did not know nor could they testify positively that there were no prospective bidders at the site of the proposed bridge on the day the contract was advertised to be let. These parties may have been in full view of the site, and they may not have seen any one at or near there, yet that does not signify that there was no one there in fact, for they may have been there and still not observable from the point where plaintiff claims the contract was let, which was a half mile or more from the site. Prospective bidders might have been there, down in the creek, the banks of which might have obstructed the view. At any rate, this was a matter the trial court had a perfect right to take into consideration in passing upon the weight to be given to their testimony.

In addition to what has just been said, the positive testimony of one of the party who drove out to the point where the contract was said to have been let, is to the effect that the country between that point and the bridge site was rough and uneven, and for that rea-

son it was a physical impossibility for them to see the site from the place where they stopped and turned back to Carl Junction.

To view this evidence in the most favorable light possible to plaintiff, ·still it cannot · be sincerely contended that there is no evidence to support the finding of the court upon that issue. In fact, there was a direct and sharp conflict between the testimony introduced by plaintiff and defendant which presented a proper question of fact to be determined by the court.

The law is that where the evidence introduced by the respective parties is conflicting and of a substantial nature, the findings of the trial court or jury will not be disturbed by this court. [Everman v. Eggers, 106 Mo. App. 732; Culbertson v. Hill, 87 Mo. 553; Blanton v. Dold, 109 Mo. l. c. 69; Weller v. Wagner, 181 Mo. 151.] The reason for that rule is obvious. The triers of the facts have before them the witnesses who testify in the case; and they have the opportunity of observing their demeanor while upon the witness stand and their manner in testifying. They are in a much better position to judge as to the credibility of the witnesses and the weight to be given to their testimony. This rule is usually followed even in equity cases where this court has the unquestioned right to review and weigh anew the evidence of the case, and if the findings of the chancellor are based upon substantial evidence, this court will refuse to reverse a decree of the lower court on the ground that the findings were against the weight of the evidence. [Johnson v. Realty Co., 177 Mo. 595-597.]

Counsel have cited no authority sustaining the proposition that a letting of the contract a half mile from the site of the proposed bridge was a compliance with the requirements of the statute; while, upon the other hand, this court has many times held that a sale under a deed of trust if held at a place different from

that designated in the notice will not pass a valid title. [Stewart v. Brown, 112 Mo. 171; Schanewerk v. Hoberecht, 117 Mo. 22.] So must a sale under execution be made at the time and place stated in the advertisement, or it will be void. [Merchants' Bank v. Evans, 51 Mo. 335; Ladd v. Shippie, 57 Mo. 523.]

The principle underlying the cases just cited is applicable to the facts of this case; and by a parity of reasoning there is no escape from the conclusion that the contract sued on in the first count of the petition was not properly let, and for that reason the court properly held the plaintiff was not entitled to recover thereon. [Roeder v. Robertson, 202 Mo. 1. c. 537.]

II. The second count of the petition is based upon a contract to construct a bridge across Tuckahoe or Turkey Creek, and for moving and rebuilding a bridge across Jones Creek. The contract price for both was $2,990.

By a subsequent and separate oral agreement, the defendant employed plaintiff to construct some concrete pillars for the Jones Creek bridge, and agreed to pay him $65.00 therefor.

During the progress of this work the county court issued to plaintiff a county warrant for the sum of $1,100 as part payment on several bridges he was building for the county, designating the bridges and the sum to be applied to each, and one of the items stated therein, and among them, is the following:

"Tuckahoe Bridge                    $1,100.00"

Had plaintiff credited that sum upon the amount due him on the Tuckahoe Bridge, there would have been a balance due him of $1,890; but instead of doing that he applied $65 of it in payment of the concrete pillars built for the Jones Creek bridge, which left $1,035 to be credited on the Tuckahoe account. He then credited the latter account with said sum, which left a balance of $1,955 due him on that account.

The defendant raises two objections to the action of the plaintiff in applying the $65 of the $1,100 payment in satisfaction of the $65 item due him for building pillars for the Jones Creek bridge; first, because the warrant upon its face made the application of the payment of the $1,100 on the "Tuckahoe Bridge," and that it having done so, the plaintiff had no power or authority to change that application of payment from the Tuckahoe bridge account and apply it in payment of the concrete pillars account; and, second, because the contract for building the concrete pillars was not in writing as required by the statute, and is for that reason void.

If the first objection is valid, the second is immaterial in so far as this suit is concerned, for the reason he has not sued for the $65, but claims it has been paid.

As to the first objection presented, concede for the sake of agreement, without deciding it, that both of said contracts are valid—that is, the contract for constructing the Tuckahoe bridge and the contract for building the concrete pillars, yet that would not have authorized the plaintiff to make the application of payment as he attempted to do, crediting $65 of the $1,100 on the concrete pillars account, and the balance on the Tuckahoe Bridge account, for the reason that the defendant made the application of payment at the time the $1,100 was paid by it, which is shown by the warrant before mentioned.

The law of this State is well and firmly settled, that when a debtor owes two accounts and both are due he has the right to designate the one upon which payments made by him shall be applied, and if he make the application, then the creditor has no power to make the application, or to change the application so made by the debtor; but if the debtor fails or refuses to make the application of payment, then the creditor

may make it; and if neither of them makes it, then the law will make it for them according to the equity and justice of the case. [Gantner v. Kemper, 58 Mo. 570; Waterman v. Younger, 49 Mo. 415; McCune v. Belt, 45 Mo. l. c. 181; Beck v. Haas, 111 Mo. 264.]

It follows from what has been said that the trial court erred in permitting the plaintiff to make the application of payment after the county had previously done so. There are no other objections urged against the judgment rendered in favor of the plaintiff on the second count of the petition.

III. The third count of the petition is based upon the contract to construct three steel bridges—one across Turkey Creek, on range line, sections 32 and 33; one at Terry's Ford; and the third across Center Creek at Reeds Station. The contract price was $9,650. The county court has paid on this account the sum of $5,400, leaving a balance of $4,250, claimed by plaintiff to be due him, less the sum of $600 paid by the defendant to David Miller, or for his use and benefit, under the following circumstances:

The record discloses the fact that plaintiff had been constructing bridges in Jasper county for several years prior to the beginning of this litigation, and that said Miller was a subcontractor in constructing those bridges, including the three last mentioned. That on September 29th, 1903, the plaintiff gave to said Miller the following order upon the county court of said county, to-wit:

"St. Joseph, Mo., Sept. 29, 1903.
"Hon. County Court Jasper County,
Carthage, Mo.
"Gentlemen: Please pay to David Miller the sum of thirty-five hundred dollars for building all bridges for which I now have contracts for in Jasper Co. excepting Jones Creek Bridge, payable when work is

completed and accepted by T. V. Greib, Co. Surveyor, and charge same to account of me on my contracts.

"Respectfully,

"J. H. SPARKS."

Indorsed on the back thereof is the following:

"For value received I assign the within order to the Central National Bank of Carthage, Mo.

"DAVID MILLER."

The record discloses the facts that Miller was a subcontractor under plaintiff, and furnished much of the labor and materials used in the construction of those bridges; that he borrowed money from the Central National Bank of Carthage, with which he carried out his subcontracts, and turned over to the bank orders issued by plaintiff to him on the county court of Jasper county similar to the one before mentioned, in payment of the money so borrowed by him. At the time plaintiff issued the order before set out, Miller was indebted to said bank in a sum in excess of $3,500 therein mentioned. At the time Miller indorsed the order over to the bank, it gave him $400 in cash, and credited his account with $3,100, the balance thereof. Sometime thereafter the county court of said county paid to the bank on the order $600. Plaintiff does not object to the action of the court in so paying that $600, because it was paid before he countermanded the order.

About this time Miller abandoned his contracts with plaintiff to build the bridges, and left them in an unfinished condition. When Miller threw up his contracts and refused to complete the bridges, the plaintiff served written notice on the county court not to pay the order issued by him to Miller for $3,500, dated September 29, 1903. The plaintiff was then required under his contracts with the county court to complete the bridges, which he did at a cost of something over

the sum of $4,000. After plaintiff had completed the bridges according to his contracts, he demanded of the county the balance due him under his contracts, which the court offered to pay, less the $2,900, balance claimed by the bank on the order issued by plaintiff to Miller on the county, and by Miller indorsed to the bank. The plaintiff objected to the deduction of this $2,900, because it was not payable until Miller completed the bridges and they were accepted by the county surveyor. The bank gave to the county an indemnifying bond, and in spite of plaintiff's protest, the county paid said $2,900 to said bank, and offered to pay plaintiff the balance, which he refused to accept.

It is thus seen that the only controversy between the plaintiff and defendant on the third count of the petition is over this $2,900 paid by the county court to the Central National Bank.

The defendant's position regarding that matter is this. It contends that the course of dealing between the plaintiff and said Miller created some kind of an agreement or understanding between plaintiff and the bank by which it was to furnish the necessary money to Miller with which to purchase material and employ labor used in the construction of the bridges by him under his subcontract, and that plaintiff was to issue orders to Miller on the county for money due or to become due him for work and materials done and furnished on said bridges, which the bank was to receive in payment of the money so furnished by it to Miller.

While the record shows that was the course of dealing between the parties, yet the record is perfectly silent as to any agreement or understanding on the part of plaintiff by which he bound himself to pay to the bank or to any one else any sum of money except as stated in the orders issued; and that he in no manner authorized the bank or any one else to furnish Miller money on account of said orders. The mere

fact that the bank took said orders and furnished Miller money thereon, with the additional fact that plaintiff may have known of that arrangement between Miller and the bank, did in no manner authorize the county to pay to Miller or the bank the money called for in the order, except as stated in the order itself. If the county or the bank saw fit to pay the orders before Miller earned the money called for by them and before they were due or payable, as expressed upon their face, then that was their fault and misfortune, which should not be visited upon the plaintiff who was no party to the transactions, and out of which he received no benefit or profit. The order was merely a direction to the county court to pay the sum stated therein to Miller when the bridges were completed by him and accepted by the county surveyor, and not before. The meaning of the order is plain and unambiguous, and if the bank or the county court saw proper to advance money to Mr. Miller on the order before he had earned it, that is their misfortune, as before stated. The fact is undisputed that Miller never completed the bridges mentioned in the order; and the record discloses the fact that plaintiff was required to expend $4,100 in order to complete them after Miller threw up his contracts; and to now make him pay the $2,900 in addition would be not only against the letter and spirit of the order, but it would be grossly unjust and inequitable.

We are, therefore, of the opinion that the action of the court in holding the county liable to him for that sum was proper.

IV. The defendant sets up in its answer divers counterclaims and setoffs, aggregating about $15,000, for money paid by the county to plaintiff for bridges constructed by him in years gone by, under various contracts, which defendant alleges were illegally let to plaintiff.

It is not alleged that the bridges were not con-
structed according to the terms of the contract, or
that they were not worth the sums of money paid
therefor; nor is it alleged that the county refused to
receive the bridges, while, upon the other hand, the
evidence shows that the contracts for constructing
these bridges had been fully performed on both sides
long prior to the institution of this suit. The record
also discloses the fact that the contracts for their con-
struction were fair and reasonable; that the bridges
were substantially built and were reasonably worth the
money paid by the county for them; and that they were
accepted by the county and that they have been re-
tained and constantly used by the public ever since,
with no offer to return them to the plaintiff.

Under those circumstances, conceding for argu-
ment's sake the contracts were illegal in their incep-
tion, yet it would be unjust and inequitable to permit
the county to retain the bridges and at the same time
recover back the money paid therefor. That principle
of equity should apply here which requires persons
who seek equity to do equity before their prayer will
be heard.

This is no novel question to the jurisprudence of
this country. The law is that where there has been a
complete performance of the contract on both sides
and it is fair and reasonable in fact, there can be no re-
covery of the consideration by the municipal corpora-
tion where it retains and enjoys the benefits of the
contract, and where it cannot or will not restore the
property acquired by the contract, even though the
contract be one which the law denounces as illegal and
which could not be enforced on that account. [Frick
v. Town of Brinkley, 61 Ark. 397, 33 S. W. 527; 20
Am. and Eng. Ency. Law (2 Ed.), 1180; Riverside Co.
v. Yawman & Erbe Mfg. Co. (Cal.), 86 Pac. 900; Long

v. Boone County, 36 Iowa 60; Inhabitants of Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264.

In Frick v. Town of Brinkley, supra, a member of the city council (prohibited by law from making contracts with the city) sold the city a lot of tiling and received payment therefor. Subsequently an action was brought to recover the purchase price without returning the tiling. The court say: "We think it [the town] cannot, in good conscience, be allowed to receive the value back, while at the same time it is enjoying the benefits of its purchase—at all events when it does not even offer to restore that which it claims could not have been its property, and, consequently, is not now its own. This is not the assertion of any right which the appellant has, nor any obligation resting upon the appellee, under the contract of purchase, but it is a rule of justice and right growing out of an implied contract and obligation of every one, whether a natural or artificial person, to restore to another that which belongs to him, and that is in the possession of the former or in his power to restore; and when the power to restore does not exist, or when a restoration in the nature of things becomes impracticable, then to be precluded from recovering back the fair price paid. In such cases as this, the sole duty of the courts seems to be to see that the public corporation suffers no material loss or injustice, but further than this they could but inflict burdens upon others more or less disastrous, where no resulting good can follow—a thing courts of justice ought not to indulge in."

In Riverside County v. Yawman & Erbe Mfg. Co., supra, the court says: "It affirmatively appears from the complaint that the board of supervisors has purchased, paid for, and retained the use of certain personal property, and a court is asked to compel restitution with penalty in favor of such purchasers. The Legislature never contemplated conferring such power

upon a public corporation when it enacted section 8 of the County Government Act. The right there sought to be conferred was to recover money paid without authority at law. To say that one who receives property under a contract that the owner retains and uses it is not authorized by law to pay for it would be to say that a public corporation may take and use property for public purposes without compensating the owner, provided they can once get possession of it under the guise of a contract; and to say that they may recover the purchase price actually paid without tendering back that which they have received would be to say that our Legislature intended to discourage common honesty as applied to public corporations, and that the courts were to be made 'handmaidens of iniquity.' ''

In Long v. Boone County, 36 Iowa 60, quoted with approval in King v. Mahaska County, 75 Iowa 336, it was held: "When the legally constituted agent of the county contracts for work in respect to which he has no power unless authorized by a special vote of the people, and executes a warrant for the amount thereof to the treasurer of the county, which is voluntarily paid by the latter officer, the county cannot recover back the amount so voluntarily paid."

While some of the expressions in the case of King v. Mahaska County, 75 Iowa 329, seem at first blush to support defendant's contention, when critically considered it will be seen that it distinguishes that case from the case of Long v. Boone County, 36 Iowa 60, by using the following language, on page 336: "When all the pleadings are considered the defendant was not in the attitude of seeking to recover back money paid to the plaintiff on these illegal contracts."

The Supreme Court of the United States and courts of last resort of many of the States go much further in the adjustment of the rights of parties growing out of illegal contracts than this court has. In

other words, they grant not only the relief this court grants but they go much further and relieve where this court will not do so, as will appear from the following cases:

The Supreme Court of the United States, in the case of Chapman v. County of Douglas, 107 U. S. l. c. 357, in discussing this question, used this language: "This doctrine was fully recognized by the Supreme Court of Nebraska as the law of that State in the case of Clark v. Saline County, 9 Neb. 516, in which it adopts from the decision of the Supreme Court of California the following language: 'The city is not exempted from the common obligation to do justice which binds individuals. Such obligations rest upon all persons, whether natural or artificial. If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation. [Argenti v. San Francisco, 16 Cal. 282.] The legal liability springs from the moral duty to make restitution.' "

The same rule is announced in the following cases: Louisiana v. Wood, 102 U. S. 294; Marsh v. Fulton Co., 77 U. S. l. c. 684; Hitchcock v. Galveston, 96 U. S. l. c. 351; McBrian v. Grand Rapids, 56 Mich. 103; 1 Beach on Pub. Corp., sec. 227.

These cases are but samples of the overwhelming authorities which hold that where a moral duty exists to make satisfaction, a legal liability springs therefrom. And as said by the Supreme Court of the United States in the case of Hitchcock v. Galveston, supra: "There may be a difference between the case of an engagement made by a corporation to do an act expressly prohibited by its charter, or some other law, and a case of where legislative power to do the act has not been

granted. Such a distinction is asserted in some decisions. But the present is not a case in which the issue of the bonds was prohibited by any statute. At most, the issue was unauthorized. At most, there was a defect of power. The promise to give bonds to the plaintiffs in payment of what they undertook to do was, therefore, at farthest, only *ultra vires;* and, in such a case, though specific performance of an engagement to do a thing transgressive of its corporate power may not be enforced, the corporation can be held liable on its contract. Having received benefits at the expense of the other contracting party, it cannot object that it was not empowered to perform what it promised in return, in the mode in which it promised to perform. This was directly ruled in State Board of Agriculture v. Railroad, 47 Ind. 407. There it was held, that 'although there may be a defect of power in a corporation to make a contract, yet if a contract made by it is not in violation of its charter, or of any statute prohibiting it, and the corporation has by its promise induced a party relying on the promise and in execution of the contract to expend money and perform his part thereof, the corporation is liable on the contract.' See, also, substantially to the same effect, Allegheny City v. McClurkan & Co., 14 Pa. St. 81; and, more or less in point, Maher v. Chicago, 38 Ill. 266; Oneida Bank v. Ontario Bank, 21 N. Y. 490; Argenti v. City of San Francisco, 16 Cal. 256; Silver Lake Bank v. North, 4 Johns. (N. Y.) Ch. 370.''

The same is true of the case at bar. Jasper county was not prohibited by statute from building bridges; but, upon the other hand, the statute expressly grants to the county that power.

Conceding the contracts for building the bridges were illegal, yet the execution of those contracts was, at most, a defective exercise of the power granted; and

when the bridges were constructed in pursuance thereof and accepted by the county, then she was, to say the least, morally bound, in the absence of fraud, to pay for them, if not legally bound to do so, which she is not under the decisions of this court. [Wolcott v. Lawrence County, 26 Mo. 272; Anderson v. Ripley Co., 181 Mo. 46; Woolfolk v. Randolph Co., 83 Mo. 501; Crutchfield v. Warrensburg, 30 Mo. App. 456.]

The conclusions reached in these cases are correct and rest upon sound reason. They were suits based upon contracts not in writing, etc., which were prohibited by statute, and the court in those cases simply enforced the statute as it found it, and, to have done otherwise would have given force and effect to contracts which were prohibited by statute from being made. [Roeder v. Robertson, 202 Mo. l. c. 537.]

But that is not the question involved in this case. Here the plaintiff is not asking this court to enforce these alleged illegal contracts. They were years ago fully performed on both sides; and the defendant is now here by way of counterclaim, in the nature of a cross-bill, seeking to recover back the money she paid for those bridges without an offer to return them to the plaintiff. This she cannot do without she first returns or offers to return them to him; and the reason therefor is this. If the contracts were void, then the title to the bridges never passed thereby from plaintiff to the defendant and became her property; but they remained his property the same as though the contracts had never been entered into. That being true, then when the county acquired the possession of the bridges under those void, yet colorable, contracts, she was morally bound to pay for them, as she did; and conceding, as before stated, without deciding it, that after accepting the bridges and paying for them, she had the right to repudiate the contracts and sue for the recovery of the money paid by her for them, she would

be morally bound, and from that springs the legal lia-
bility, to return the bridges to plaintiff before she
would be permitted to recover back the contract price
so paid.

This same principle underlies the case of Roeder
v. Robertson, 202 Mo. 522, and on page 535, this lan-
guage is used: "The act is .prohibitive in its opera-
tion. It seeks to prevent foreign corporations from
doing business in this State until they have complied
with the provisions of the act by filing a copy of their
charter or articles of incorporation with the Secretary
of State and by appointing an agent in this State to
represent them. If such corporations, in violation of
the act, do business in this State, all such transactions
are, by the courts, declared null and void, and all con-
tracts made by them with citizens of this State for the
sale of goods, wares and merchandise are nullities, and
the title to the property sought to be transferred there-
by does not pass to and vest in the vendee, but remains
in the vendor, the same as if the pretended contract had
not been executed. . . . . For under the facts of
this case a citizen of this State would not be permitted
to recover the possession of the property sold to the re-
spondents, nor its value, in case of its conversion, with-
out first refunding or paying back to the respondents
the consideration paid by them under the void contract,
and received by A. W. Stevens & Son. He would be
estopped from claiming the property until the pur-
chase price had been returned." [Simpson v. Stod-
dard Co., 173 Mo. 421.]

And there is another reason equally valid why the
defendant should not be permitted to recover upon her
counterclaims, which is well expressed by Judge Fox,
in the case of Simpson v. Stoddard Co., 173 Mo. l. c.
466, in the following language: "The principle is that,
where a county court is charged by law with the per-
formance of certain duties in reference to a particular

subject-matter, and that court undertakes, in good faith, to execute its powers, but fails to observe certain requirements of the law, so that its acts in that regard are irregular, such acts, if acquiesced in, will become binding upon the counties as completely as if they had been regular in the first instance."

We are, therefore, of the opinion that the ruling of the trial court in disallowing all of the counterclaims was proper.

Because of the error of the trial court, pointed out in the second paragraph of this opinion, regarding the application of payments, the judgment is reversed, and the cause remanded with directions to disallow plaintiff's claim of $65 for the concrete pillars constructed for the Jones Creek bridge, without prejudice, and to affirm the judgment in all other particulars. *Valliant, P. J.,* concurs; *Lamm* and *Graves, JJ.,* dissent.