# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

05-6054EM

_____

| | | |
|---|---|---|
| In re : James McGregory, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Ross H. Briggs, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Objector - Appellant, | * | Eastern District of Missouri |
| | * | |
| v. | * | |
| | * | |
| John V. LaBarge, | * | |
| | * | |
| Trustee - Appellee. | * | |

_____

Submitted: March 2, 2006
Filed: March 24, 2006

_____

KRESSEL, Chief Judge, FEDERMAN AND VENTERS, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

This is an appeal from an Order of the United States Bankruptcy Court for the Eastern District of Missouri[1] issued on September 12, 2005, in which the court granted

_____

[1] The Honorable Barry S. Schermer, Chief Judge, United States Bankruptcy Court for the Eastern District of Missouri.

the Chapter 13 Trustee's Motion for Order Denying Attorney Fees and Directing Disgorgement of Fees Paid. We affirm.

FACTUAL BACKGROUND

Ross H. Briggs filed a Chapter 13 bankruptcy case on behalf of Debtor James McGregory on June 3, 2002. At that time, Briggs filed an Attorney Fee Election form in which he elected to receive a flat fee of $1,700 for his services in the bankruptcy case pursuant to local rule.[2] The Debtor's Chapter 13 Plan was confirmed on August 8, 2002. The Debtor paid Briggs $99 up front, and the remaining $1,601 of the attorney fee was paid through the Plan.

On June 1, 2004, while he was an attorney practicing law in the Bankruptcy Court for the Eastern District of Missouri, Briggs became employed with Wells Fargo Bank, N.A.,[3] as a "home mortgage consultant" whereby he arranged home mortgage refinancing for Chapter 13 debtors in other parts of the country. He says that, in cases where these debtors qualified for refinancing with Wells Fargo, and the bankruptcy courts approved, he would arrange for the debtors to refinance their homes, make a lump sum payment to their respective trustees, exit their Chapter 13 cases early, and receive their discharge. After finding that his efforts to refinance Chapter 13 bankruptcies in other jurisdictions was "literally saving homes from imminent foreclosure" or was providing debtors an opportunity to preserve their right to a

_____

[2] E.D.Mo.L.B.R. 2016-3. This rule allows Chapter 13 debtors' counsel to elect between a "flat fee option" of $1,700, or a "fee application option" in which the attorney receives an initial fee of $1,100 with the option to submit additional fee applications. In either event, a debtor's attorney is obligated to provide all legal services necessary for the representation of the debtor through the conclusion of the case, specifically including representation of the debtor on motions to incur debt.

[3] The Good Faith Estimate of Settlement Costs and other loan documents refer to the lender as "Wells Fargo Bank, N.A.," but Briggs sometimes refers to his employer as "Wells Fargo Home Mortgage." Hereafter, we refer to these entities collectively as "Wells Fargo."

discharge when subject to a trustee's motion to dismiss, Briggs "concluded that he was ethically bound to offer such services to his own law clients where the circumstances warranted such consideration."[4] He further states that, when he became employed at Wells Fargo, he refrained from filing additional consumer bankruptcies in the bankruptcy court. However, he continues to represent the clients for whom he had already filed cases.

In this case, between October 2003 and April 2005, the Trustee filed three motions to dismiss the Debtor's case for failure to make plan payments. In each instance, the Debtor was able to cure the arrearage and the motions were withdrawn. Nevertheless, being "ethically bound" to do so, Briggs decided in the Spring of 2005 that the Debtor needed his services as a mortgage consultant and so he arranged to refinance the Debtor's residential loan, which was then held by another lender, with Wells Fargo. On June 28, 2005, Briggs filed a motion on the Debtor's behalf seeking permission to incur debt to refinance the loan secured by the Debtor's home. Briggs acted as Wells Fargo's agent in this transaction.

According to the Motion to Incur Debt, Debtor owed his previous mortgage lender approximately $47,000 at the time of the refinancing. The new loan with Wells Fargo increased the loan amount to $60,400, which included $1,953 in discount costs, $495 in processing fees, and a $400 underwriting fee, plus costs for title insurance and taxes. Total closing costs for the transaction were $3,903, from which Briggs received a commission. The new loan reduced the Debtor's interest rate from 14.64% to 8.75% and also reduced the monthly payments. The Debtor was to receive $11,923.60 in cash out of the loan proceeds. At the time, the amount necessary to pay all allowed claims in the Chapter 13 case at 100% was approximately $7,000. The Motion provided for the Debtor to pay those claims in full and "exit his case early." The Motion further stated that the Debtor consented to Briggs' continued legal

---

[4] Appellant's Appendix at 19 (Briggs' Response to Trustee's Motion for Order Denying Attorney's Fees and Disgorgement).

representation while also acting on Wells Fargo's behalf, but Briggs did not submit a written consent with the Motion, nor did the Motion reveal that Briggs was receiving a commission out of the transaction.

Meanwhile, three days before Briggs filed the instant Motion, on June 28, 2005, the bankruptcy court issued an order in another case, *In re Samuel Smith*,[5] in which Briggs had arranged a refinancing transaction similar to this one, also with Wells Fargo. In that Order, the bankruptcy court found that Briggs' participation in the refinancing process both as Smith's attorney and as an employee of the lender was an actual conflict of interest that prevented him from being loyal to both his client and his employer. The bankruptcy court ordered Briggs to disgorge most of his fees in that case and further ordered that he submit a list of all cases in which he arranged similar transactions. Briggs appealed that Order to the BAP but, after the Trustee moved to dismiss the appeal as moot, and Briggs did not respond, we dismissed that appeal. Briggs appealed our dismissal to the Eighth Circuit Court of Appeals, where it is currently pending.[6]

Armed with the *Smith* Order, the Trustee opposed the Motion to Incur Debt in this case. He also filed a Motion for Order Denying Attorney Fees and Directing Disgorgement of Fees Paid in the Debtor's bankruptcy case. On August 11, 2005, the bankruptcy court granted the Debtor's Motion to Incur Debt. Following a hearing on

---

[5] *In re Samuel Smith*, Case No. 03-56169 in the Bankruptcy Court for the Eastern District of Missouri.

[6] In addition, in the *Samuel Smith* case, after Briggs failed to submit the list of other cases in which he arranged similar loan transactions as the June 28 Order directed him to do, the bankruptcy court issued an Order to Show Cause why he should not be sanctioned for failing to submit the list. Briggs filed a response, but the bankruptcy court nevertheless found that sanctions were warranted for failing to submit the list. Thus, by Order dated July 25, 2005, the bankruptcy court sanctioned Briggs for failing to comply with its previous Order and directed the Trustee to withhold payments due him from other cases. After the District Court for the Eastern District of Missouri affirmed the bankruptcy court on the July 25 Order, Briggs appealed that decision to the Eighth Circuit Court of Appeals where it is also pending.

4

the Motion requesting denial and disgorgement of fees, however, the bankruptcy court issued an Order on September 12, 2005, granting the Trustee's Motion, denying Briggs' attorney's fees, and requiring Briggs to disgorge the $1,700 he received in this case. In making its ruling, the bankruptcy court specifically referred to its rationale in its previous Order in the *Samuel Smith* case.

In sum, the bankruptcy court concluded that Briggs' dual representation of the Debtor and Wells Fargo was an impermissible conflict of interest which precluded Briggs from being loyal to both the Debtor and Wells Fargo. Further, the court found that the Debtor's purported waiver of the conflict was invalid. The court then found that it had the authority to deny payment of fees and order disgorgement of fees already paid, and ordered that Briggs disgorge the $1,700 in fees paid in this case. Briggs appeals.

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[7] We review the legal conclusions of the bankruptcy court *de novo*.[8]

---

[7]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[8]*First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

DISCUSSION

In his first point on appeal, Briggs argues that the bankruptcy court erred in finding that the dual representation was an actual, *per se,* conflict of interest and in finding that the Debtor's purported waiver of the conflict was invalid. Asserting that his dual representation was legitimate, Briggs points to Rule 4-1.7(b) of the Missouri Rules of Professional Conflict, which provides in relevant part:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities . . . to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; [and] (2) the client consents after consultation.[9]

Briggs asserts that his representation of Wells Fargo did not adversely affect his representation of the Debtor because, after all, the transaction resulted in the Debtor lowering his interest rate and leaving his Chapter 13 early. Moreover, Briggs argues the Debtor knowingly and voluntarily consented to Briggs' dual representation. Thus, the dual representation, he asserts, was permissible under the Rules of Professional Conduct.

"An attorney owes a duty of undivided loyalty to the client."[10] And, "every employee owes his or her employer a duty of loyalty."[11] By participating in the Debtor's refinancing transaction both as counsel for the Debtor, and as an employee of Wells Fargo, Briggs had conflicting duties of loyalty and, therefore, a conflict of

---

[9] Mo. Rule of Prof'l Conduct 4-1.7(b).

[10] *Missouri v. Planned Parenthood of Kansas*, 66 S.W.3d 16, 19 (Mo. Ct. App. 2002); Mo. Rule Prof'l Conduct 4-1.7, cmt.

[11] *Scanwell Freight Express STL, Inc. v. Chan*, 162 S.W.3d 477, 479 (Mo. banc 2005).

6

interest.[12] In *Mid-America Living Trust*, the Missouri Supreme Court considered whether a trust marketing company's in-house attorney could also represent the company's clients. The Court held that the attorney had obviously divided interests, particularly since his advice might be tainted by his desire to continue receiving referrals from his employer.[13] Similarly, the bankruptcy court held in this case that Briggs could not have been loyal to both the Debtor and to Wells Fargo because their interests were in direct conflict, and it was likely Briggs' advice to the Debtor could be tainted by his desire to continue receiving employment from Wells Fargo.

Briggs essentially concedes that the dual representation creates a conflict. We agree. The bankruptcy court was correct that Briggs' dual representation of the Debtor and Wells Fargo in the same transaction constitutes an actual, *per se*, conflict of interest because the relationship necessarily involves divided loyalties.

Briggs' primary argument is that the Debtor voluntarily and knowingly waived the conflict in accordance with the Rules of Professional Conduct and, therefore, the bankruptcy court's finding that the waiver was invalid in this case is erroneous. In the *Smith* Order, the Bankruptcy Court questioned whether this type of conflict was waivable in the first place, but concluded in each case that, even if it is waivable, neither Smith, nor the Debtor in this case, gave a proper waiver of the conflict, primarily because there was no evidence of any consultation between Briggs and the two debtors, or that the debtors were properly advised of the potential risks presented by the dual representation.[14] Briggs asserts that the Trustee conceded the waiver issue at hearing in this case and, therefore, cannot argue ineffective waiver in this appeal.

---

[12] *See In re Mid-America Living Trust Assocs., Inc.*, 927 S.W.2d 855, 862 (Mo. banc 1996).

[13] *Id.*

[14] *See Mid-America Living Trust*, 927 S.W.2d at 867 n. 4 (a waiver must be given "after consultation and a full disclosure of the potential risks").

7

Briggs also asserts that, even if this issue is properly before us on appeal, he produced evidence that the Debtor validly waived the conflict in this case and the bankruptcy court erred in failing to consider that evidence.

We need not decide whether the Trustee conceded the waiver issue, or whether Briggs presented sufficient evidence of a valid waiver in this case, because we conclude that this type of dual representation, particularly in the bankruptcy context, presents such an inherent and impermissible conflict that it cannot be waived.

The Missouri Supreme Court has held that some types of conflict cannot be cured by consultation and consent: "Rule 4-1.7(b)(1) only allows for consultation and consent if 'the lawyer reasonably believes the representation will not be adversely affected.'"[15]  Moreover, the Missouri Supreme Court has expressly held that "attorneys for settlement service providers (including without limitation escrow closing companies, brokers, lenders, and title insurers) may not represent or furnish legal services to the provider's customers."[16]  According to the Supreme Court, "[a]ttorneys simply may not represent multiple parties with differing interests in a single transaction."[17]  "This is because, when a lawyer is laboring under this kind of

---

[15] *State ex rel. Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 739 (Mo. banc 2004).

[16]
*In re First Escrow, Inc.*, 840 S.W.2d 839, 848 (Mo. banc. 1992) (noting that such relationships have drawn "universal condemnation" by courts that have considered the issue when a service provider's attorneys purport to represent or furnish legal services to the provider's customers). *See also Mid-America Living Trust* , 927 S.W.2d at 867 n. 4 (the Missouri Supreme Court expressly questioning whether a trust company's in-house counsel's dual representation of the company and the company's client is subject to waiver).

[17] *In re First Escrow,* 840 S.W.2d at 848.

conflict of interest, the conflict in effect forecloses alternatives that would otherwise be available to the client."[18] In other words, according to the Missouri Supreme Court, if a scheme has an "unavoidable appearance of impropriety," it cannot be condoned.[19]

Thus, the Missouri Supreme Court has held that attorneys for lenders may not represent or furnish legal services to the lender's customers. Although Briggs was not acting as Wells Fargo's attorney in the transaction with the Debtor, but rather was acting as its agent, no attorney could reasonably believe that the representation of a debtor in these instances might not be adversely affected by the simultaneous representation of the lender. The conflicting duties of loyalty in these transactions are further exacerbated by the fact that Briggs earns a commission from them and, therefore, alternatives that would otherwise be available to the debtor may be foreclosed. While we recognize that the Missouri Supreme Court has condoned conflicts in some cases where there was a knowing and voluntary waiver,[20] we conclude, based on the Missouri Supreme Court's precedent discussed above, that this sort of dual representation has such an "unavoidable appearance of impropriety," particularly in the bankruptcy context, that it cannot be waived.

Finally, Briggs argues that, even assuming there was a conflict, and the purported waiver was ineffective, the bankruptcy court erred in ordering him to

---

[18] *Union Planters Bank v. Kendrick*, 142 S.W.3d at 737 (internal quotemarks and citation omitted).

[19] *Id.* at 740. *See also Missouri v. Planned Parenthood of Kansas*, 66 S.W.3d at 20 ("[W]hen it is apparent that a conflict of interest exists that threatens a breakdown of the adversarial process, courts have the inherent power and duty to intervene.")

[20] *See e.g., State ex rel. Nixon v. American Tobacco Co.,* 34 S.W.3d 122, 135 (Mo. banc. 2001); *Union Planters Bank v. Kendrick*, 142 S.W.3d at 739 (the standard for such waiver is whether the waiver of conflict was given after consultation and full disclosure of the potential risks; in order for informed consent to be valid, a lawyer must prove by clear proof that his adverse interest was disclosed to the client and was perfectly understood; such consent must be knowing, intelligent, and voluntary).

disgorge all of his fees. He asserts that, in view of the fact that the case was filed in June of 2002, he earned the $1,700 in attorney fees for work done in the bankruptcy case long before the conflict arose in the Spring of 2005. Hence, he argues that it was not proper for the bankruptcy court to deny all of the fees and order that he disgorge them. He also says that the Bankruptcy Court's authority to review attorneys' fees to debtors' counsel is limited to § 329(b) of the Bankruptcy Code which provides that the court may order the return of any fees, to the extent they are excessive, if an attorney's compensation exceeds the reasonable value of the attorney's services.[21] Finally, relying on the decision in *In re Devers*,[22] Briggs asserts the connection of the ethical violation to the attorney fees was improper, pointing out that the bankruptcy court approved the Motion to Incur Debt in this case, so even if there was an ethical conflict, Briggs brought value to the Debtor and should not have his fees disallowed. Briggs asserts that the cancellation of the fees was nothing more than a penalty for violations of the Code of Professional Responsibility and the Bankruptcy Judge is without statutory authority for assessing such a penalty.

We disagree. The United States Supreme Court has expressly held that conflicts of interest warrant the disallowance of debtors' attorney fees in bankruptcy cases. According to the Supreme Court, "'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act."[23] "Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation."[24]

---

[21] 11 U.S.C. § 329(b).

[22] 33 B.R. 793, 799 (D. D.C. 1983).

[23] *Woods v. City Nat. Bank & Trust Co. of Chicago*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941), *reh'g denied* 312 U.S. 715, 61 S.Ct. 736.

[24] *Id.*

10

Although *Woods* was decided under Chapter X of the Bankruptcy Act, many courts still rely on it as the applicable standard for disallowance and disgorgement of fees in cases involving conflicts of interest by debtors' counsel.[25] While employment under § 329 as attorney for a debtor is not subject to the bankruptcy court's approval, the attorney is nevertheless a fiduciary and an officer of the court.[26] Consequently, conflicts of interest by a debtor's attorney can, standing alone, justify denial of all fees.[27] "[T]he general rule is that counsel's fees are denied when a conflict of interest is present, but the bankruptcy court has the ability to deviate from that rule in those cases in which 'the need for attorney discipline is outweighed by the equities of the case.'"[28] Furthermore, the bankruptcy court's discretion under *Woods* to deny fees is extremely broad and, according to the *Vann* court, has been upheld by every circuit.[29] Finally, expressly rejecting *In re Devers*,[30] the sole case relied upon by Briggs on this issue, the *Vann* court held that bankruptcy courts are not required to put a dollar value on the amount by which the attorney's unethical conduct depleted the value of his services.[31]

We agree with the *Vann* Court's rationale, particularly since the Eighth Circuit has endorsed the notion, in the context of §§ 327, 328 and 330, that "[i]t is appropriate to deny or reduce compensation to a professional that represents a party

---

[25] *See In re Vann*, 136 B.R. 863, 871 (D. Colo. 1992) ("[t]here is no reason to suggest the rationale of *Woods* does not apply in fee determinations under § 329."), *aff'd* 986 F.2d 1431 (10th Cir. 1993).

[26] *See id.* (and cases cited therein).

[27] *Id.* at 870-71 (relying on *Woods*, 312 U.S. at 268, 61 S.Ct. at 497, 85 L.Ed.820).

[28] *Id.* at 870 (citations omitted).

[29] *Id.*

[30] 33 B.R. 793.

[31] *In re Vann*, 136 B.R. at 871.

11

. . .who has an interest adverse to the bankruptcy estate."[32]  This is true, even when there has been no harm shown to the debtor:  "Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation.  It is no answer to say that fraud or unfairness were not shown to have resulted."[33]

## CONCLUSION

For the reasons discussed above, we conclude that the bankruptcy court did not err in finding Briggs' dual representation of the Debtor and Wells Fargo in the same transaction constituted a *per se* conflict of interest and that any purported waiver was invalid.  Further, bearing in mind that the bankruptcy court's discretion in denying fees in these cases is very broad, after reviewing the record in this case, we find that the bankruptcy court did not clearly err in denying Briggs' fees and ordering that he disgorge them in this case.  The bankruptcy court's Order of September 12, 2005, is, therefore, affirmed.

_____

---

[32] *In re Mahendra*, 131 F.3d 750, 759 (8th Cir. 1997) (sanctioning an attorney who purported to represent both the debtor and himself as a creditor of the debtor).

[33] *Woods*, 312 U.S. at 268, 61 S.Ct. at 497.