STATE of Missouri, Respondent/Cross–Appellant,

v.

PLANNED PARENTHOOD OF KANSAS and Mid–Missouri, and Planned Parenthood of the St. Louis Region, Appellants/Cross–Respondents.

No. SC 83778.

Supreme Court of Missouri, En Banc.

Jan. 22, 2002.

Rehearing Denied Jan. 31, 2002.

Roger K. Evans, Donna Lee, New York, New York, Curtis E. Woods, Todd J. Jacobs, Arthur A. Benson II, Jamie K. Lansford, Kansas City, for Appellants-Cross/Respondents.

Jordan B. Cherrick, Jeffrey R. Fink, Special Asst. Atty. Gen., Thompson Coburn, LLP, St. Louis,Jeremiah W. (Jay) Nixon, Atty. Gen., Joel E. Anderson, Asst. Atty. Gen., Rikki L. Jones, Asst. Atty. Gen., Jefferson City, for Respondent-Cross/Appellant.

Lori J. Levine, Jefferson City, for Amicus Curiae (Missouri Family Health Council).

HOLSTEIN, J.

This case was previously before the Court in *State v. Planned Parenthood of Kansas and Mid–Missouri*, 37 S.W.3d 222 (Mo. banc 2001). As noted there, a special assistant attorney general (SAAG) had been appointed to pursue litigation claiming the invalidity of contracts for family planning entered into between the Missouri Department of Health and two organizations, Planned Parenthood of Kansas and Mid–Missouri, and Planned Parenthood of St. Louis Region, based on an appropriations statute, section 10.705, which was part of House Bill 10, 1999 Laws of Missouri 127–30.

In that case, the attorney general had also represented Maureen Dempsey, then the director of the Department of Health (the director), in her official capacity, as a named defendant and necessary party. In effect, the attorney general represented both sides of the lawsuit. On one side, he represented the plaintiff, "The state of Missouri." On the other side, he represented the defendant, the director. The

case was remanded to the circuit court, noting that the case "raises serious issues concerning justiciability and state sovereignty." *Id.* at 226. The Court also noted that a declaratory judgment in state court was an effective means of defending the constitutionality of a statute. But because the Court had serious questions as to the authority granted by the attorney general to the SAAG based upon the uncertain record, the case was reversed and remanded.

On remand, new letters were issued by the attorney general's office authorizing the SAAG to pursue various claims for injunction, declaratory judgment, and recovery of monies from Planned Parenthood under House Bill 10, section 10.705 (1999), and House Bill 1110, section 10.710 (2000). Noticeably absent from the letters was any authority to pursue *quo warranto* or any other relief against the director, even though she had previously been determined to be a necessary party[1] due to her status as the state official who entered into the allegedly illegal contracts. Consistent with his instructions, the SAAG then filed an amended petition that sought no relief against the director, naming only the two Planned Parenthood organizations as defendants. The state and Planned Parenthood each filed motions for summary judgment. Though the director was no longer a named party, an assistant attorney general filed a responsive pleading on her behalf challenging the state's motion for summary judgment. In the response, she asserted, *inter alia*, that her interpretation of the statute was correct, that the con-

---

1. A necessary party is one who must be joined if feasible because that person has a direct and immediate interest in the subject matter of the litigation and who, if not joined, would have the right to relitigate the question. *Buford v. Lucy*, 328 S.W.2d 14, 19 (Mo.1959); *Rule 52.04(a)*.

tracts were valid, and that the state's interpretation of the statute violated the constitutional right of association of the defendants. The trial court entered judgment declaring the statute constitutional and that the contracts between the organizations and the director were invalid.

The case comes to us again in a more awkward condition than before. Though the case was dismissed as to the director, both at trial and on appeal the attorney general, through his assistants, has continued to make appearances, file briefs, and argue positions on behalf of the director that are diametrically opposed to the positions he takes as plaintiff. For all practical purposes, the attorney general has made the director a party by seeking a declaration that the contracts are valid. Through his assistants, the same attorney general is exercising control over the claims made and relief sought by those with adverse interests to the director.

■ Generally, only when a statute so provides may a civil action be brought in the name of the state. *Rule 52.01.* The attorney general is authorized to institute "in the name of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state." *Sec. 27.060.* Moreover, the attorney general has specific authority to bring a *quo warranto* proceeding to prevent any unlawful conduct in the execution of the duties of a public office. *Sec. 531.010.* It is generally held that the office of attorney general is clothed, in addition to the duties expressly defined by statute, with all the powers pertaining thereto under the common law. *State ex rel. Nixon v. American Tobacco Co., Inc.,* 34 S.W.3d 122, 136 (Mo. banc 2000). Generally, when the attorney general brings an action on behalf of the state, it is pursuant to statutory authority, such as the *quo warranto* provisions of chapter 531 RSMo, or under the declaratory judgment provisions of chapter 527, and the action is brought by the state on the information or at the relation of the attorney general. *See* Rule 52.01. The attorney general may sue by his official title rather than by name, but the court may require the name to be added. *Rule 52.13(d).*

The attorney general may appoint assistant attorneys general to represent his position, as occurred here. Those persons are to "assist the attorney general in his official duties with the power and authority *under his direction* to represent him in the discharge of all duties of his office." *Sec. 27.020.1.* (Emphasis added.) [2]

■ In this case, the attorney general has assistants who, under his direction, are taking inconsistent positions in the same case. The attorney general, like all attorneys, is prohibited from representing a client if the representation of that client would be directly adverse to another client. *Rule 4-1.7.* Here, the arguments of the director are clearly adverse to those of the plaintiff. An attorney owes a duty of undivided loyalty to the client. *In re Allstate Insurance Co.,* 722 S.W.2d 947, 951 (Mo. banc 1987). The same attorney may not undertake to represent one client against another client that he is then representing. *Terre Du Lac Property Owners Ass., Inc. v. Shrum,* 661 S.W.2d 45, 47 (Mo.App. 1983). For the attorney general to represent two opposing sides in the same litigation involving the validity of state contracts is, at best, confusing to the public, which relies on the attorney general to vigorously enforce the constitution and

---

2. The statute makes no distinction between an assistant attorney general and a "special" assistant attorney general.

laws of this state. At worst, allowing the attorney general, under the guise of neutrality, to control both sides of any lawsuit undermines and contorts the adversarial system. That system, tested over the centuries, requires that each party be independent of the fetters imposed by counsel for an opposing party so that it may present every argument and assert every remedy that ethics and good conscience permit. For one attorney to give instruction to both sides of litigation as to the claims and remedies in the case may ensure a predictable outcome. But it will not ensure a just outcome. To put it bluntly, the attorney general must choose a side regarding the legality of the contracts and act consistently with that position in the courts.

That is not to say that the attorney general must always agree with interpretations of law made by other members of the executive branch or that the attorney general, having once rendered an opinion may not, upon reflection, later reach a contrary opinion on the interpretation of the validity of a law or state contract. However, it is required that at the same moment in time the attorney general advance only one side regarding the law in a particular case. When speaking for the state as a whole, the attorney general is the voice of the executive branch. In exercising that duty, he has substantial discretion. If the attorney general believes one of the other agency heads is unlawfully executing a statute, he has the tools to act on behalf of the state to seek judicial intervention. If he agrees with another agency's interpretation of law, he is authorized to vigorously prosecute that interpretation before the judiciary. But when he speaks on behalf of the executive branch in the courts, it must be with one clear and unequivocal voice.

The attorney general's conflict of interest is not directly asserted by the parties, though it is implicit in the first point on appeal where the defendants assert that the case involves a claim against the director inasmuch as the state attacks the director's interpretation of a statute. Nonetheless, when it is apparent that a conflict of interest exists that threatens a breakdown of the adversarial process, courts have the inherent power and duty to intervene. *Terre Du Lac Property Owners Ass., Inc. v. Shrum,* 661 S.W.2d at 47.

Therefore, this cause is again reversed and remanded to the circuit court. Upon remand, the attorney general shall make a decision as to whether to pursue the claim that the director acted illegally in entering into the contracts or to dismiss the case. In addition, if the attorney general determines to pursue this case, he is directed to cease entering appearances and filing briefs on behalf of other officials who are not parties that are inconsistent with the position he takes in his official capacity. Absent the intervention of some superior constitutional authority, the attorney general must decide which position he chooses to take in this litigation.

The Court is certainly aware that federal litigation regarding the constitutionality of sections 10.705 and 10.710 is pending and that the federal court has abstained from ruling pending a decision in this case. For that reason, and the importance of the question involved, there is a perceived need to expedite a decision on the merits. But the perceived importance of a case as a basis for taking procedural shortcuts in order to address substantive issues is neither workable nor reliable as a benchmark for appellate review. *Committee for Educational Equality v. State,* 878 S.W.2d 446, 454 (Mo. banc 1994). This is especially true in a case where the procedural re-

quirement is critical to a full and fair consideration of the substantive issues in the case. Nothing that is done here prevents the federal court from proceeding to act on the defendants' constitutional claims now pending before it.

All concur.