**Daniel R. SHIPLEY, Respondent,**

v.

**Ronald CATES, et al., Appellants.**

**No. SC 87063.**

Supreme Court of Missouri,
En Banc.

Aug. 8, 2006.

Rehearing Denied Sept. 26, 2006.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Joel E. Anderson, Rikki L. Wright, Asst. Attys. Gen., Jefferson City, Roger K. Evans, New York, NY, Arthur A. Benson, II, Jamie K. Lansford, Kansas City, for appellants.

Robert D. Nienhuis, St. Louis, John D. Landwehr, Jefferson City, for respondent.

MICHAEL A. WOLFF, Chief Justice.

**History of the Controversy**

This is the latest and, perhaps, the last battle over whether Planned Parenthood was eligible to receive state funds to provide family planning and related gynecological care to low-income women.

The funding for such services ceased at the end of fiscal year 2003. For several years in the 1990s, the general assembly appropriated, upon the governor's request, funds to the department of health (now the department of health and senior services) for providing such care. This care included family planning services, pregnancy testing, and follow-up services. Some of the money went to local health department clinics. The Planned Parenthood entities in this litigation [1] also received funds under contracts with the department for providing such care. Some of the money in the early years of state funding went to Planned Parenthood entities that perform abortions, though there is no contention that any state money was directly spent on abortion services.[2]

To ensure that no state money would encourage or subsidize abortions, even indirectly, the general assembly in 1999 enacted restrictions in the appropriations legislation.[3] The director of the department of health signed contracts with these Planned Parenthood entities, which had reorganized their corporate structures. In the contracts, the appropriations language is construed in a way that did not exclude these reorganized entities from receiving funds for non-abortion family planning and gynecological services.

The state, through a "special assistant attorney general," sued for an injunction to halt funds to Planned Parenthood and for a refund of state money spent on such services under those contracts. The state's position, as expressed by the special assistant, was that the contract did not conform to the appropriations statute. The circuit court entered judgment that Planned Parenthood was ineligible to receive these funds and ordered repayment. This Court vacated the judgment and remanded because of a question as to the authority of the special assistant attorney general to seek the relief requested in that

---

1. The entities that are defendants in this lawsuit, collectively referred to as Planned Parenthood, are Planned Parenthood of Kansas and Mid–Missouri and Planned Parenthood of the St. Louis Region.

2. Section 188.205, RSMo 2000, prohibits state funds for abortions.

3. The restrictions at issue here are in House Bill No. 10, Section 10.705 (1999) and House Bill 1110, Section 10.710 (2002).

action. *State v. Planned Parenthood of Kansas and Mid–Missouri*, 37 S.W.3d 222 (Mo. banc 2001). After remand, the authority of the special assistant attorney general was restated; judgment again was entered in favor of the state. On appeal, that judgment was vacated because this Court held that the state, through the attorney general, could not take positions on both sides of the litigation. *State v. Planned Parenthood of Kansas and Mid–Missouri*, 66 S.W.3d 16 (Mo. banc 2002).

Upon remand after the second opinion by this Court, the attorney general moved to dismiss the action. Daniel Shipley, the taxpayer plaintiff in this case, sought to intervene. The circuit court declined to allow dismissal of the action, and the attorney general sought a writ of mandamus in this Court. In that proceeding, this Court upheld the authority of the attorney general to dismiss the action and held that Shipley did not have a right to intervene in that case. *State ex rel. Planned Parenthood of Kansas and Mid–Missouri v. Kinder*, 79 S.W.3d 905 (Mo. banc 2002).

## Shipley's Taxpayer Lawsuit

Shipley filed this separate taxpayer's lawsuit in 2002 seeking a declaration that Planned Parenthood is ineligible to receive the family planning funding; he sought an injunction against payment of the funds to Planned Parenthood and, in an amended petition, sought restitution of funds already paid for the services that were rendered at the Planned Parenthood facilities. Planned Parenthood received $168,900.00 in state money under the contracts in fiscal year 2000 and received $499,950.00 in state money under the contracts in fiscal year 2003. In the intervening two years, the circuit court injunctions were in effect and

Planned Parenthood did not participate in the program.

Shipley's lawsuit contends that Planned Parenthood was ineligible to receive family planning funds because of the restrictions in the appropriations statutes. The relevant restrictions in section 10.705 (1999) and section 10.710 (2002) are as follows:

> An otherwise qualified organization shall not be disqualified from receipt of these funds because of its affiliation with an organization that provides abortion services, provided that the affiliated organization that provides abortion services is independent as determined by the conditions set forth in this section. To ensure that the state does not lend its imprimatur to abortion services, and to ensure that an organization that provides abortion services does not receive a direct or indirect economic or marketing benefit from these funds, an organization that receives these funds and its independent affiliate that provides abortion services may not share any of the following:
>
> (a) The same or similar name;
>
> (b) Medical or non-medical facilities, including but not limited to business offices, treatment, consultation, examination, and waiting rooms;
>
> (c) Expenses;
>
> (d) Employee wages or salaries; or
>
> (e) Equipment or supplies, including but not limited to computers, telephone systems, telecommunications equipment and office supplies.
>
> An independent affiliate that provides abortion services must be separately incorporated from any organization that receives these funds.[4]

---

**4.** At one point in the prior litigation, *State v. Planned Parenthood of Kansas and Mid–Missouri*, the attorney general on behalf of the director of health and Planned Parenthood challenged the constitutional validity of including "substantive" legislation in appropriations bills. That challenge was never resolved; the appeal where the issue was

Planned Parenthood does not provide abortion services. It is, however, affiliated with two organizations that do provide abortions. The Kansas–Missouri entity is affiliated with the abortion provider Comprehensive Health of Planned Parenthood of Kansas and Mid–Missouri, Inc.; the St. Louis Planned Parenthood is affiliated with the abortion provider Reproductive Health Services of Planned Parenthood of the St. Louis Region.

Although various terms are defined in the appropriations laws, neither provided definitions for the terms "share" or "similar name." In contracting with Planned Parenthood, the department included the language of the appropriations laws and also defined the terms "share" and "similar name." In defining "similar name," the department provided that contractors must demonstrate compliance with the statutes through documentation establishing that they do not share "[t]he same or similar name under applicable corporation statutes of Missouri or any other state in which the Contractor and affiliate are incorporated" with any affiliated abortion provider. The department defined "share" as "services, employees, or equipment that are provided or paid for by the family planning contractor on behalf of the independent affiliate that provides abortion services without payment or financial reimbursement from the independent affiliate who [sic] provides abortion services."

Planned Parenthood took various measures, including restructuring its organizations, to comply with the appropriations statutes and the contract provisions.

Shipley's petition requested that the court declare the following: (1) that the appropriations statutes do not violate the Missouri or United States Constitutions, (2) that the appropriations statutes are

unambiguous and that the department's interpretations of "share" and "same or similar" name are invalid, and (3) that the Planned Parenthood entities have not qualified and do not currently qualify for receipt of state family planning funds. Shipley sought injunctive relief against Planned Parenthood to prohibit these entities from applying for or obtaining state family planning funds, and against defendant Ronald Cates, acting director of the department, to prohibit him from issuing contracts or requests for proposals contrary to the express language of the appropriations statutes. Shipley filed a first amended petition in 2003 substituting defendant Richard Dunn, director of the department beginning in January 2003, and adding a claim for restitution to the State of Missouri of all family planning funds that have been paid to Planned Parenthood since fiscal year 1999.

The circuit court entered judgment in 2005 for Shipley, finding that the director's interpretation of "similar" and "share" was invalid and that the relationship between Planned Parenthood and the abortion affiliates rendered Planned Parenthood ineligible to receive funds under the appropriations statutes. The circuit court found that the appropriations restrictions do not violate the Missouri or United States constitutions, enjoined Planned Parenthood from receiving any further funds under the statute, enjoined the director from distributing family planning funds in violation of the appropriations statutes, and ordered Planned Parenthood to repay amounts it was paid under the program plus interest. The court subsequently issued an amended judgment, ordering Planned Parenthood to pay Shipley's attorney's fees and litigation expenses from the returned funds.

raised, 37 S.W.3d at 227, was decided on other grounds.

The department and Planned Parenthood appeal. This Court has jurisdiction because this case involves the validity of Missouri statutes. Mo. Const. art. V, sec. 3.

### Resolution of this Appeal

Planned Parenthood argues that the trial court erred in ordering it to repay funds received under the contracts because (1) the director had authority to enter into the contracts, (2) Planned Parenthood was entitled to rely on the director's construction of the statute, and (3) it would be inequitable to require repayment of the funds.

Shipley does not contend that Planned Parenthood failed to deliver services as provided for in the contract nor does he contend that Planned Parenthood violated the terms of the contract. Shipley's challenge is based on his contention that the director's interpretation of the appropriations statutes, as embodied in the contracts, did not comply with those laws.

■ Regardless of the validity of the director's interpretation, there is no need for an injunction at this point. The family planning funding has ended. There is, quite simply, nothing left to enjoin. Similarly, there is no need for declaratory relief. A declaratory judgment provides guidance to the parties, declaring their rights and obligations or otherwise governing their relationship. *Missouri Soybean Ass'n v. Missouri Clean Water Com'n*, 102 S.W.3d 10, 25–26 (Mo. banc 2003). The parties to these contracts—the state and Planned Parenthood—no longer have a relationship.

The only live question remaining is whether, under established legal principles, the Court must order a restitution of the money that was paid for services under the contracts.

■ Restitution of money received under a completed contract with the government can occur in two situations: first, where the contract is *void* from inception; and second, where the government has entered into an illegal—or *voidable*—contract and there is some evidence of unfairness, fraud, bad faith, or collusion and it would not be inequitable to require a refund.

■ A contract is void where the public official did not have constitutional or statutory authority to enter into the contract. *Aetna Ins. Co. v. O'Malley*, 343 Mo. 1232, 124 S.W.2d 1164 (1938); *County of St. Francois v. Brookshire*, 302 S.W.2d 1 (Mo.1957). "All persons dealing with [government] officers are charged with knowledge of the extent of their authority and are bound, at their peril, to ascertain whether the contemplated contract is within the power conferred." *Aetna*, 124 S.W.2d at 1166. "[A] state is not bound by contracts made in its behalf by its officers or agents without previous authority conferred by statute or the constitution, unless such authorized contracts have been afterward ratified by the legislature." *Id.*

■ Shipley has not challenged the director's legal authority to contract with third parties for the provision of family planning services.[5] Shipley only chal-

---

5. Shipley, however, does argue in response to Planned Parenthood's brief that the director's payment of funds to Planned Parenthood violated article IV, section 28 and article III, section 39(4) of Missouri's constitution. Shipley did not include this claim in his petition before the trial court. "To preserve a constitutional question for review in this Court, it must be raised at the earliest possible opportunity; the relevant sections of the Constitution must be specified; the point must be preserved in the motion for new trial, if any; and, it must be adequately covered in the briefs." *In re H.L.L.*, 179 S.W.3d 894, 897 (Mo. banc 2005). These constitutional ar-

lenges the legality of the director's interpretation of the appropriations statute and the director's award of contracts to Planned Parenthood. The situation in *Aetna* and *Brookshire*—where the contract or contract provision is outside of the power conferred to the government agent—is not present. Because there is no viable challenge to the director's authority to contract for family planning services, and because the appropriations statutes specifically provided such authorization, the contracts are not void.

██ In addressing the second ground for restitution of money paid under a completed contract, Shipley argues that Planned Parenthood should have made sure that the department was doing business in accordance with the law prior to contracting with the department. The failure to do so, Shipley contends, renders the payments made under the contract subject to recovery. This argument is contrary to many decades of this Court's precedent.

 Though a person entering into a contract with the government is charged with knowing the government agent's authority to contract, he or she is not charged with knowing whether the authorized contract is somehow defective because of the agent's misinterpretation or misapplication of law. *Sparks v. Jasper County,* 213 Mo. 218, 112 S.W. 265 (1908). In order to obtain a refund under a completed but illegal contract, a plaintiff must show additional evidence of bad faith, fraud, or collusion, or he must show that a refund would be equitable, such as where the government has returned the contracted-for items.

Money paid under completed contracts was at issue in *Sparks v. Jasper County.* The county sought in a counterclaim to recover money it paid to the plaintiff for

bridges previously constructed under various contracts, alleging that the contracts were illegally let. 112 S.W. at 269. The county made no claim that the bridges were not constructed in accordance with the contract terms, that the bridges were not worth the amount the county paid, or that the county refused to receive the bridges. Rather, the contract was fully performed on both sides, the contracts were fair and reasonable, and the bridges continued to be in public use. Under these circumstances, this Court held that even if the contracts were illegal, "it would be unjust and inequitable to permit the county to retain the bridges and at the same time recover back the money paid therefor." *Id.* "[W]here there has been a complete performance of the contract on both sides, and it is fair and reasonable in fact," this Court said, "there can be no recovery of the consideration by the [government] where it retains and enjoys the benefits of the contract, and where it cannot or will not restore the property acquired by the contract, even though the contract be one which the law denounces as illegal and which could not be enforced on that account." *Id.* at 269–270. (Citations omitted.)

Similarly, in *Polk Township, Sullivan County v. Spencer,* 364 Mo. 97, 259 S.W.2d 804 (1953), this Court held that a township was not entitled to a refund of money paid for work where the contract was fully performed yet was voidable. The township had authority to contract for the labor, but violated strong public policy by hiring a township board member to perform the labor. As in *Sparks,* there was no allegation of fraud or that the price charged for the work was excessive. There also was no loss of money or property to the township, and the township was unable to re-

guments have not been properly preserved and are not addressed.

turn the benefits it received under the contract. This Court declined to apply the principles of restitution where there was no unjust enrichment to the defendant and no loss to the township. *Id.* at 807.

*Bride v. City of Slater,* 263 S.W.2d 22 (Mo.1953), is similarly instructive. There, this Court found that a contract between the City and the plaintiff lacked an essential element that was a statutory prerequisite. 263 S.W.2d at 26–27. Despite this finding, the City was not allowed to recover on its counterclaim for back payments from the plaintiff because the City had accepted and used the fuel oil it purchased under the contract. *Id.* at 28. Of significance, this Court noted that there were no allegations of fraud, collusion, embezzlement, unfairness, or improvidence and the contract's subject matter was within the City's contractual powers. *Id.* at 27–28; *See also City–Wide Asphalt Co. v. City of Independence,* 546 S.W.2d 493 (Mo.App. 1976).

Under these precedents, the state is not entitled to restitution. The contracts were fully performed when the trial court rendered its judgment. The taxpayer's lawsuit was filed after money from the 2000 appropriations had been reimbursed to Planned Parenthood for services previously rendered; the trial court's judgment was rendered after money from the 2003 appropriations had been reimbursed to Planned Parenthood for services previously performed. As Shipley's counsel conceded at oral argument, the family planning services were provided under the contracts. Those services obviously cannot be returned. There is no evidence that the director or Planned Parenthood acted fraudulently or in bad faith in con-

tracting for the services. The record shows that Planned Parenthood took numerous measures to comply with the contract provisions, including reorganizing corporate structures. In these circumstances, the government cannot accept the benefits of the contracts and retain those benefits while also recovering the consideration paid.

■ Shipley also argues that Planned Parenthood was put on notice of the questionable legality of the funds and should not prevail under equitable principles. Shipley asserts that because the circuit court has twice rendered judgment against Planned Parenthood on this issue in the case brought by the state of Missouri, it should be held to the knowledge that the contracts were illegal. This argument is unpersuasive; this Court vacated both of the circuit court judgments and the state eventually dismissed the earlier lawsuit.[6]

The department's previous director stated in a letter to a senator that the Missouri attorney general advised the department that its interpretations complied with the appropriations language. The attorney general continues to defend the contracts' legality. While these circumstances may seem helpful to Planned Parenthood's position—as the circuit court's judgments seem to be for Shipley's position—they are not dispositive. Planned Parenthood under the law is not responsible for knowing whether the director's interpretation was correct.

## Conclusion

There are no legal grounds that would justify ordering restitution. Other issues related to declaratory and injunctive relief, as noted, need not be resolved because the

---

**6.** *State v. Planned Parenthood of Kansas and Mid–Missouri,* 37 S.W.3d 222 (Mo. banc 2001); *State v. Planned Parenthood of Kansas and Mid–Missouri,* 66 S.W.3d 16 (Mo. banc 2002); and *State ex rel. Planned Parenthood of Kansas and Mid–Missouri v. Kinder,* 79 S.W.3d 905 (Mo. banc 2002).

state funding of family planning under the program at issue here no longer exists. The judgment of the circuit court is reversed.

STITH, TEITELMAN and WHITE, JJ., concur.

LIMBAUGH, J., dissents in separate opinion filed.

PRICE and RUSSELL, JJ., concur in opinion of LIMBAUGH, J.

STEPHEN N. LIMBAUGH, JR., Judge.

I respectfully dissent. The contracts entered into between the Director of the Missouri Department of Health and the Planned Parenthood defendants were illegal and void. Therefore, the state is entitled to the return of the funds expended. It is no defense that the contracts were fully performed, because suit was filed before any funds were expended and any services were performed so that defendants were put on notice that the contracts were suspect from the start.

The family planning appropriations for the four years in question were conditioned on the following requirements:

> To ensure that the state does not lend its imprimatur to abortion services, and to ensure that an organization that provides abortion services does not receive a direct or indirect economic or marketing benefit from these funds, an organization that receives these funds and its independent affiliate that provides abortion services may not share any of the following:
>
> (a) The same or similar name;
>
> (b) Medical or non-medical facilities, including but not limited to business offices, treatment, consultation, examination and waiting rooms;
>
> (c) Expenses;
>
> (d) Employee wages or salaries; or
>
> (e) Equipment or supplies, including but not limited to computers, telephone systems, telecommunications equipment and office supplies.

1999 Mo. Laws 127–30 (sec. 10.705); 2002 Mo. Laws 168–72 (sec. 10.710).

The trial court correctly held that the contracts entered into violated this statute because the Planned Parenthood defendants shared similar names, facilities, expenses, employee wages and salaries, and equipment and supplies with their affiliated abortion providers. The names are certainly similar: The abortion provider for Planned Parenthood of Kansas and Mid–Missouri (PPKMM) is Comprehensive Health of Planned Parenthood of Kansas and Mid–Missouri, and the abortion provider for Planned Parenthood of the St. Louis Region (PPSLR) is Reproductive Health Services of Planned Parenthood of the St. Louis Region. Regarding the other categories, both defendants concede that they have a business relationship with their respective abortion providers that includes, among other things, operating in the same buildings, having a single management team, and having the same phone number. The trial court found as to PPSLR, in particular, that "Staff and patrons of PPSLR and Reproductive Health both use the same entrance, lobby, waiting area, security area, lunch room, restroom, locker room and conference room [and that] PPSLR's own lease agreement with its affiliated abortion provider describes these areas as 'shared spaces.'" Additionally, the trial court found that both defendants share expenses with their abortion providers for utilities services and certain employee wages and salaries, and that they share equipment and supplies as well. The trial court noted, for example, that "PPKMM shares a computer server with Comprehensive Health and PPSLR shares

a telephone system with Reproductive Health." The trial court also determined that the situation at PPSLR was especially egregious in that "employees of PPSLR perform the actual abortion services claimed to be provided by Reproductive Health.... In fact, women seeking and obtaining abortions from Reproductive Health deal exclusively with PPSLR employees through every step of the process, since Reproductive Health has no employees." Given these facts, the trial court rightly concluded that the Planned Parenthood defendants were ineligible to receive state funds and that the contracts entered into were unlawful.

The defense to this conclusion is that the relationships and arrangements with the abortion providers were proper under the Director's interpretation of the appropriations statutes, an interpretation that the Director included in the invitation for bids and in the contracts themselves. The Director's interpretation, however, does not comport with the appropriation statutes. First, the Director took it on herself to specifically define the term "same or similar name" by reference to section 351.110(3), RSMo Supp.2005, the statute that regulates the names that can be given to new Missouri corporations. That statute provides that "The corporate name ... shall be distinguishable from the name of any domestic corporation existing under any law of this state ... [and][i]f the name is the same, a word shall be added to make such name distinguishable from the name of such other corporation ...." Although this statute prohibits corporations from having the *same* names, it does not, unlike the appropriations statute, prohibit corporations from having *similar* names. Thus, under the Director's interpretation, a proposed name of a new corporation is acceptable if merely one word is added to a name belonging to an existing corporation. In this way, the Director effectively eliminated the word "similar" from the appropriations statute. That erroneous interpretation in turn allowed the Director to conclude that the Planned Parenthood defendants were eligible to enter into the contracts even though their names were similar to their respective abortion providers.

Second, the Director unilaterally redefined the statutory term, "share," as: "services, employees, or equipment that are provided or paid for by the family planning contractor on behalf of the independent affiliate that provides abortion services without payment or financial reimbursement from the independent affiliate who provides abortion services." Under this definition, there would be no impermissible "sharing" if (as was the case) the Planned Parenthood defendants were reimbursed by their affiliated abortion providers for their "share" of the services, employees, or equipment. But this definition, like the Director's definition of the words "same or similar," does not reflect the plain and ordinary meaning of the words used. To "share" is "to partake of, use, experience, or enjoy with others." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2087 (1986). The word has nothing to do with a requirement for payment or financial reimbursement. And when used in its plain meaning, to "share" includes all of the various activities that the trial court found were shared in fact.

In short, the Director had no authority to enter into the contracts with the Planned Parenthood defendants because the defendants were too intertwined with their abortion providers, and consequently, they were not eligible for funding under the appropriations statute. Indeed, the statute *prohibited* the Director from entering in such contracts. The majority writes, "A contract is void where the public official did not have constitutional or statu-

tory authority to enter into the contract," citing *Aetna Ins. Co. v. O'Malley,* 343 Mo. 1232, 124 S.W.2d 1164 (1939); *County of St. Francois v. Brookshire,* 302 S.W.2d 1 (Mo.1957). And, according to Williston, "[A]n act declared to be void by statute which is malum in se or against public policy is utterly void and incapable of ratification." 15 WILLISTON ON CONTRACTS sec. 1762 (3d ed.1972). Thus, the contracts here were void.

As again the majority duly notes, restitution is the remedy for government payments under a void contract, even where the void contract was fully executed. *County of St. Francois,* 302 S.W.2d at 3. In his seminal work, THE LAW OF RESTITUTION, Professor Palmer states the simple rationale: "Restitution serves to effectuate the objectives of the prohibition." 2 GEORGE E. PALMER, THE LAW OF RESTITUTION 225 (1978). Furthermore, a defendant's ignorance that a government transaction is unlawful is no defense. To borrow once more from the majority opinion, "All persons dealing with [government] officers are charged with knowledge of the extent of their authority and are bound, at their peril, to ascertain whether the contemplated contract is within the power conferred." *Aetna,* 124 S.W.2d at 1166. Moreover, "a state is not bound by contracts made in its behalf by its officers or agents without previous authority conferred by statute or the constitution, unless such authorized contracts have been afterward ratified by the legislature." *Id.* Nor does a government officer's own misinterpretation of the law afford defendants any relief, through estoppel or otherwise. *State v. Leggett,* 359 S.W.2d 790, 799 (Mo.1962); *County of St. Francois,* 302 S.W.2d at 3.

The majority comes to the conclusion that the contracts were not void, and avoids the consequence that restitution is the remedy, by claiming that plaintiff "has not challenged the Director's legal authority to contract with third parties for the provision of family planning services ... [and that] the appropriations statutes specifically provided such authorization ...." But this critically mischaracterizes the issue presented. Plaintiff's challenge is not to the Director's legal authority to contract with third parties for the provision of family planning services, the challenge is to the Director's legal authority to contract with third parties for the provision of family planning services *that are in any way tied to abortion services.*

This mischaracterization of the plaintiff's claim pervades the balance of the majority's analysis, which, in sum, is that "the contracts were fully performed ... the family planning services were provided ... [and the state] cannot accept the benefits of the contracts and retain those benefits while also recovering the consideration paid." The state, however, received no benefit from the performance of these contracts, at least no legal benefit. The contracts performed did not provide family planning services, they provided family planning services tied to abortion services. In other words, to the extent the state received a "benefit," it was the benefit of family planning services tied to abortion services, which was a benefit that was neither requested nor authorized, and in fact the state's payment for that benefit was prohibited by law. As such, there was no benefit at all.

In each of the cases relied on by the majority, this Court made clear that the government body had accepted the benefits of *lawful* services as opposed to services that were prohibited by statute or the constitution. In *Bride v. City of Slater,* 263 S.W.2d 22, 27 (Mo.1953), this Court observed that "the contract, though void, pertained to a subject matter concerning which the City had the power to

contract . . ."; in *Polk Tp., Sullivan County v. Spencer*, 364 Mo. 97, 259 S.W.2d 804, 807 (1953), this Court observed that "The thing contracted for, Spencer's work and labor, was not itself illegal . . ."; and in *Sparks v. Jasper County*, 213 Mo. 218, 112 S.W. 265, 271 (1908), this Court stated, "Jasper county was not prohibited by statute from building bridges; but, upon the other hand, the statute expressly grants to the county that power."

A more pertinent case is *County of St. Francois*, in which the county filed suit seeking to recover $600 from the defendant attorney on the theory that state law was violated by using county funds to pay the defendant for legal services rendered. This Court, after concluding that the payment *did* violate state law, held that the county was entitled to restitution even though, obviously, the legal services could not be returned. *Id.* at 3. Moreover, this Court ordered restitution after making it clear that defendant "was paid under the honest though mistaken belief by all concerned that the county court was authorized" to make the payment. *Id.* at 5. The Court then explained that "the authorities are uniform in holding that recovery may be had if the purported contract was completely beyond the power of the public body to make and where the contract was absolutely void . . . ." *Id.*

Finally, in balancing the equities as is required in all cases involving equitable remedies, the Planned Parenthood defendants must be charged with knowledge that the contracts at issue were of questionable legality and that they performed the contracts at their peril. In June of 1999, before any services were rendered and before any money was paid, a lawsuit was filed against the state and both defendants to prevent the implementation of the contracts. *See State v. Planned Parenthood of Kansas and Mid–Missouri and*

*Planned Parenthood of the St. Louis Region*, 37 S.W.3d 222, 224 (Mo. banc 2001). The suit was brought by a special assistant attorney general, and the grounds raised were the same as those today. Ever since that time, the litigation challenging the contracts has been constant. Although the first suit was not decided until late in the first year, the trial court entered injunctions prohibiting the performance of the contracts for the second and third years. And although the majority makes much of the fact that on appeal, the judgments in the first cases were vacated, the grounds for vacating the judgments were wholly procedural, and the appellate courts never addressed the merits of the cases. *Planned Parenthood of Kansas and Mid–Missouri*, 37 S.W.3d at 222; *State ex rel. Planned Parenthood of Kansas and Mid–Missouri v. Kinder*, 79 S.W.3d 905 (Mo. banc 2002). In any event, the Supreme Court sums up the applicable rule as follows:

> The conclusion to be drawn from all the cases is that after a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peril and subject to the power of the court to restore the status, wholly irrespective of the merits as they may be ultimately decided.

*Jones v. S.E.C.*, 298 U.S. 1, 17–18, 56 S.Ct. 654, 80 L.Ed. 1015 (1936). Such is the case here.

Indeed, the Planned Parenthood defendants conceded the point early on. In their written opposition to the temporary restraining order sought in the first case filed, the Planned Parenthood defendants expressly acknowledged they would have to repay the money if the courts determined that the contracts were unlawful. To quote from their memorandum to the court:

There is nothing more basic in law than the proposition that there is neither irreparable injury nor lack of an adequate remedy at law when the only harm would be the payment of money, which clearly can be recovered if, in fact, the plaintiff succeeds on the merits of its claims .... [I]f plaintiff were to prevail, it would have a legal remedy that would allow it to recover any funds that, *arguendo,* were paid wrongfully.

Although the Planned Parenthood defendants mischaracterized their repayment of the money as a "remedy at law" for which damages are awarded, as opposed to the equitable remedy of restitution, they knew that, one way or another, they would have to repay the money.

For the foregoing reasons, I would affirm the judgment of the trial court.